G. Weld Thomas, Appellant, *v.* The New York and Greenwood Lake Railway Company et al., Respondents.

An agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund or operate as an equitable assignment thereof.

The railroad corporation, defendant, issued certain income bonds secured by mortgage on its road. Each of said bonds contained a covenant for the payment of interest semi-annually out of the earnings of the road, followed by a proviso to the effect that no more interest shall be paid than shall be certified by defendant's "board of directors, for the time being, to have been by said corporation earned over and above all expenses, including necessary repairs during six months ending one month before such time fixed for such half-yearly payments, and theretofore to have accumulated during the current year, and in default of said certificates no interest shall be payable." In an action by holders of a portion of said bonds for an accounting, etc., *held,* that no trust relation between the bondholders and the company authorizing an accounting was created by the contract; that the designation of a fund out of which the interest was to be paid did not operate as an equitable assignment of the fund for the benefit of the bondholders, or create an equitable lien thereon in their favor, so as to constitute the surplus earnings a trust fund; that until there was a surplus beyond what was required for expenses and necessary repairs, ascertained as provided in the contract, the company remained the absolute owner of the fund, and the bondholders acquired no title, legal or equitable, thereto, and so long as the company remained solvent, while a breach of the contract rendered it liable to the bondholders, the only remedies left open to them were such as the law affords for a breach of contract in other cases.

The distinction between this case and one in reference to the administration in a court of equity of the estate of an insolvent corporation pointed out.

*Boardman* v. *L. S. & M. S. R. R. Co.* (84 N. Y. 157); *Uhlman* v. *New York Life Ins. Co.* (109 id. 421), distinguished.

The complaint alleged that defendant had made earnings "over and above its operating expenses, including necessary repairs, and including all expenses properly chargeable or payable out of gross earnings;" that such expenses did not exceed seventy per cent of the gross receipts, and then set forth certain alleged misapplications of the earnings, to wit, that it used and appropriated a large part of the earnings to rebuilding its railway and to building new railway and structures. *Held*, that the complaint did not set forth facts showing a breach of the contract; that it failed to disclose that the corporation had received earnings applicable under the contract to the payment of interest, which it either wrongfully retained or refused to apply, or had applied to purposes not within the fair meaning of the words "all expenses, including necessary repairs;" that the question what expenses were "properly chargeable" was one of law, and the necessary facts should have been alleged showing that the company had appropriated earnings to unauthorized purposes; that the pleading was to be treated as if the acts specified were the grounds of complaint for misapplication and diversion, and the averments that the acts enumerated were "wrongful" or "improvident," were allegations of law, not of fact; that it was for the board of directors to determine in the first instance what repairs were necessary, and a mistake in judgment merely as to the necessity or extent of repairs directed, in the absence of averments of fraud or bad faith, afforded no ground for complaint; that the court could not review the exercise of its discretion by the board where there was room for a difference of opinion; that the rebuilding of the road, the improvement of the roadway, the erection of new buildings, bridges or structures, the construction of new sidings, etc., might constitute necessary repairs, and the board of directors, acting in good faith, might so determine.

The complaint alleged that the board of directors had wrongfully neglected and refused to certify that any interest whatever had been earned. *Held*, that while under the contract a certificate was made a condition precedent to the right of bondholders to maintain an action for breach of the contract, the wrongful withholding of a certificate when demanded, satisfied the condition; that the allegation of refusal to certify implied a prior demand, and so, that the complaint in this respect was sufficient.

(Argued June 15, 1893; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 29, 1892, which affirmed a judgment in favor of defendants entered upon an order of Special Term which overruled demurrers to the amended complaint.

The complaint is as follows:

The plaintiff, suing in his own behalf, as well as in behalf of all other holders and owners of income mortgage bonds issued by the defendant, the New York and Greenwood Lake Railway Company, similarly situated with himself, who shall come in as parties to, and contribute to the expenses of this action for an amended complaint — alleges, upon information and belief:

I. That the defendant, the New York and Greenwood Lake Railway Company, is a foreign corporation duly incorporated under the laws of the state of New Jersey, and that it owns and operates a line of railroad from a point in or near Jersey City, New Jersey, to or near Greenwood Lake in said state, together with branches of its main line, and is the owner of the franchises and property described in the mortgages hereinafter particularly mentioned.

II. That on the 30th day of November, 1878, the defendant railway company duly issued and put upon the market its bonds, known as its first mortgage income bonds, to the amount of $900,000 par value, each of said bonds being under seal and of the denominations of $50, or multiples thereof, up to $1,000, par value, and in and by each of said bonds said railway company covenanted and promised to pay to the person named therein (being the purchaser thereof), or his assigns, thirty years after the date thereof, the principal sum named therein and also interest thereon at six per cent per annum, half-yearly during said term, on the first days of April and October in each year, out of the earnings of said company, at its agency in the city of New York. Each of said bonds contained the following proviso: "Provided always, nevertheless, that no more interest shall be payable by virtue hereof than shall be certified by a vote of a majority of the board of directors for the time being to have been, by said corporation, earned over and above all expenses, including necessary repairs during the six months ending one month before such time fixed for such half-yearly payments, or theretofore to have accumulated during the current year, so as altogether to make

enough to pay at the rate of six per cent per annum, and in default of such certificates, no interest shall be payable."

III. That to secure said issue of bonds, the defendant railway company on said 30th day of November, 1878, duly executed to the defendants, Edwin F. Bedell and Charles G. Barber, *as trustees* for the owners and holders of said bonds, *a mortgage upon all its franchises and property then owned or subsequently acquired by it*, and all appurtenances thereto, which said mortgage was thereupon duly recorded in compliance with the laws of New Jersey, in all the counties in which the mortgaged property, or any of it, was located, both as a mortgage of real estate and also as a chattel mortgage. And that said trustees thereupon duly accepted the trust reposed in them by said mortgage.

IV. That on the 30th day of November, 1878, the defendant railway company also duly issued and put upon the market its bonds known as its *second* mortgage income bonds to the amount of $1,800,000 par value, said bonds being under seal and of various denominations from $100 to $1,000, and in and by each of said bonds said railway company covenanted and promised to pay to the person named therein (being the purchaser thereof), or his assigns, bearers thereof, *thirty years* after its date for value received, the principal sum named in said bond, and also interest *thereon at six per cent* per annum half-yearly during said term, on the first days of May and November in each year, out of the earnings of said company, at its agency in the city of New York. Each of said bonds contained the following proviso : "Provided always, nevertheless, no more interest shall be payable by virtue hereof than shall be certified by a vote of a majority of the board of directors for the time being to have been by said corporation earned over and above *all expenses* during the six months ending one month before such time fixed for such half-yearly payments, or to have heretofore accumulated during the current year, so as altogether to make enough to pay interest at the rate of six per cent per annum, and in default of such certificate no interest shall be payable. In estimating expenses

in order to such certificate there shall be included necessary repairs, and also six per cent interest in said current year on the 'first mortgage bond.'"

V. That to secure said issue of second mortgage income bonds the defendant railway company, on said 30th day of November, 1878, duly executed to the defendants, William L. Raymond and Edson D. Hammond, as trustees for the owners and hold-ers of said bonds, a second mortgage (subsequent and subject to the first mortgage hereinbefore described), upon all its franchises and property then owned or subsequently acquired by it, and all appurtenances thereto, which said mortgage was thereupon duly recorded in compliance with the laws of New Jersey in all the counties in which the mortgaged property, or any of it, was located, both as a mortgage of real estate and as a chattel mortgage. And that said trustees thereupon duly accepted the trust reposed in them by said mortgage.

VI. And the plaintiff further alleges that he is the owner and holder of a number of said first mortgage income bonds, to wit, of five bonds of the par value of $1,000 each, and is also the owner and holder of a number of said second mortgage income bonds to the par value of $5,000, having purchased all said bonds in the open market and for value.

And plaintiff further alleges that he represents other holders of said first and second income bonds to the aggregate amount of $425,000 and upwards, par value thereof, all of said holders being similarly situated with this plaintiff.

VII. And the plaintiff further alleges upon information and belief, that shortly after the 30th day of November, 1878, the defendant railway company disposed of all or the greater part of said bonds, both the first mortgage and the second mortgage income bonds, and that a large amount of them — but precisely what amount plaintiff is unable to state — are now owned and held by *bona fide* purchasers thereof for value. That said owners and holders are very numerous, and it is impracticable to bring them in by name as parties to this action.

VIII. *That no interest has ever been paid on said first*

*mortgage income bonds or on said second mortgage income bonds.*

IX. That the defendant railway company was organized and became a corporation under the laws of New Jersey *on or about the 5th day of October*, 1878, *and almost immediately* thereafter, and on or before December 24, 1878, an agreement was entered into by and between the defendant Hewitt who was president of said railway company, and H. J. Jewett, the president of the New York, Lake Erie and Western Railroad Company (hereinafter called the Erie Railroad Company), *said defendants acting in their capacity as said presidents* respectively, under which the defendant railway company was, and has ever since continued to be and now is, *operated by the Erie Railroad Company.*

That the defendant railway company is now, and ever since said agreement has been, practically *controlled by said Erie Railroad Company.*

That a *majority of the directors of the defendant* railway company are now, and were at the time of the execution of, and ever since said agreement have been, *officers or directors of the Erie Railway Company.* The defendant *King is president of the Erie Railroad Company,* and is a director of the defendant railway company, the defendant *Hewitt* is now, and ever since its organization has been, *president and a director of the defendant railway company.*

The secretary of the Erie Railroad Company is now, and ever since said agreement has also been, secretary of the defendant railway company, and has his office for the transaction of business in the offices of the Erie Railroad Company in the city of New York.

That the capital stock of the defendant railway company is one hundred thousand dollars and no more. And that the shares of said stock are almost entirely owned and held, and ever since said agreement have been owned and held, by or for the Erie Railroad Company, and by said defendant Hewitt, or the firm of Cooper & Hewitt, of which he is a member.

X. That the defendant railway company for many years

past, and in each of said years, has during the six months ending one month before the several times fixed for the half-yearly payment of interest on said first and second income bonds respectively, earned enough money, over and above its operating expenses, including necessary repairs, and including all expenses properly chargeable against or payable out of the gross earnings, before paying interest on said bonds, to pay said interest in full, at the rate of six per cent per annum on both said classes of bonds. But that the defendant railway company has, nevertheless, at all times, wrongfully neglected and refused to pay said interest or any part thereof, and the board of directors thereof have wrongfully neglected and refused to certify that said interest, or that any interest whatever, has at any time been earned over and above said expenses. And that the defendants Hewitt and King have at all times participated and aided in such wrongful neglect and refusal.

XI. That the necessary and legitimate operating expenses of the defendant railway company, including necessary repairs, and all other expenses properly chargeable against the gross receipts before paying the interest on said bonds according to the terms thereof as aforesaid *do not exceed and never have exceeded seventy per cent of the gross receipts of said defendant railway company.* But said defendant company has, through its directors, including the defendants Hewitt and King, wrongfully and *improvidently incurred great and unnecessary expenses, which they have wrongfully charged against and paid out of the earnings of said defendant railway company, properly applicable to the payment of interest as aforesaid, and have thereby* at all times since said bonds or any of them were issued as aforesaid, wrongfully prevented the accumulation of a fund to pay said interest.

That among other diversions of the moneys properly applicable to the payment of said interest, and preventing the accumulation and application thereof for that object, the defendant railway company, with the consent and aid of the defendants Hewitt and King improvidently and wrongfully,

as against the owners and holders of said first and second income bonds, *used and appropriated a large part of said moneys to rebuilding the railway of the defendant company, and to building new railway and structures.* That such rebuilding and such building were *not necessary for the maintenance and operation of the defendant's railway.* But the defendant railway company, with the consent or by the procurement of the defendants Hewitt and King, *wrongfully charged the moneys so used and appropriated as expenses against its gross earnings.*

That the *defendant railway company*, with the consent and aid of the defendants Hewitt and King, caused a further wrongful diversion from the moneys properly applicable to the payment of said interest, and preventing the accumulation and appropriation thereof for that object *by leasing and operating a railroad known as the Watchung railroad, resulting in a loss* to the defendant railway company *in every year* since said leasing was effected, and amounting in 1888, to $10,474.02, and in 1889, to $9,493.98.

That at the time of such leasing said Watchung railroad was insolvent, and the defendant Hewitt was the receiver thereof, and that said defendants Hewitt and King and their associate directors of the defendant railway company knew, or had good reason to know, that said leasing would be improvident, and would result in loss to the defendant railway company, but they nevertheless procured the lease of said Watchung railroad to the defendant railway company to be consummated. And although the Erie Railroad Company had undertaken to operate said defendants' railway (including the Watchung railroad as one of the branches), the loss resulting from operating the Watchung railroad was, with the procurement or consent of the defendant railway company and by the procurement or aid of the defendants Hewitt and King, thrown onto the defendant railway company, and paid out of the gross receipts of said company.

XII. That the defendant railway company has never accounted to the plaintiff and the other holders of said bonds.

And the plaintiff further alleges, that before bringing this action the plaintiff applied to the defendant railway company for information respecting its receipts and disbursements, but was unable to obtain any fuller or further information than is hereinbefore set forth, and is unable after due inquiry made by him to ascertain or state more definitely than as before set forth, the facts as to said receipts and disbursements, and as to the diversions of moneys properly applicable to payment of interest on the income bonds issued by the defendant railway company.

And the plaintiff further alleges, on information and belief, that the defendant railway company has at all times wrongfully *neglected to keep such an account of its earnings and expenditures* as will show the net income of each semi-annual interest period applicable to the payment of the interest on its income bonds.

XIII. And the plaintiff further alleges, upon information and belief, that it is provided in and by said mortgage severally that in case of a sale under foreclosure, the bonds secured by said mortgage respectively may be used in payment of the purchase money at such sale, after the payment of expenses of foreclosure and the compensation and expense of the said trustees provided for in case of default under said mortgages respectively. *That the great majority of both said first and said second mortgage income bonds are owned and controlled by the defendants Hewitt and King, or by said firm of Cooper & Hewitt, and by the said Erie Railroad Company.* That it is claimed by the defendant railway company and by the defendants Hewitt and King that large sums of money are due and payable to said Erie Railroad Company and to said defendant Hewitt or his said firm, and that they would be liens prior to said bonds upon any moneys resulting from any such sale.

That in case of sale the defendants Hewitt and King and the said Erie Railroad Company intend and expect by the use of the said bonds so owned or controlled by them, to buy in the mortgaged property for their own use, benefit and advan-

tage, and inequitably to deprive the plaintiff and minority bondholders of all benefit from such sale.

XIV. And the plaintiff further alleges that *before bringing this action he duly requested the defendant trustees to bring suit for the* purposes stated in the prayer of the complaint, but they have neglected and declined to do so.

That said defendant trustees have not, as plaintiff is informed and believes, at any time taken any steps to protect or enforce the rights of plaintiff and the other holders of said bonds, or to prevent the waste of the revenue of said defendant railway company.

And plaintiff further alleges, upon information and belief, that said trustees are in the employ of the defendant Hewitt, or of the Erie Railroad Company, or of the said firm of Cooper & Hewitt, or are otherwise under their influence. They are made formal parties to this action, but no personal claim is made against them.

Wherefore, plaintiff demands judgment that the defendants (other than the defendant trustees) account for all income and earnings of said defendant railway company, and that an account be taken and stated of the net earnings of the defendant railway company over and above operating expenses, including necessary repairs and all disbursements properly payable out of gross earnings before paying interest on said income bonds during each period of six months ending one month before the several times fixed for the payment of interest on said first and second income bonds respectively since said bonds were issued, and that the defendants (other than the defendant trustees) pay the amount of said net earnings into the hands of a special receiver to be appointed by the court, to be disposed of under the direction of the court for the benefit of the plaintiff and all other *bona fide* holders of the said income bonds now outstanding issued by the defendant railway company who may come in as parties to this action, and contribute to the expense thereof. And for such further or other relief as to the court may seem equitable and proper.

*Oliver P. Buel* for appellant. The complaint states a good cause of action. (*Rogers* v. *Hosack*, 18 Wend. 319; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157; *Jermain* v. *L. S. & M. S. R. Co.*, 91 id. 483; *Prouty* v. *L. S. & M. S. R. Co.*, 1 Hun, 655, 666; *Taft* v. *H. P. & F. R. Co.*, 8 R. I. 310, 335; 2 Pom. Eq. Juris. § 1079; 1 Morawetz on Corp. § 569; *Bennett* v. *Austin*, 81 N. Y. 308; *Barr* v. *N. Y., L. E. & W. R. Co.*, 96 id. 444.) The provision that no more interest shall be payable than shall be "certified by the board of directors to have been earned," does not destroy the fiduciary relation, and, therefore, does not relieve the defendants from their liability, to account respecting the administration of their trust. (*Marvin* v. *Brooks*, 94 N. Y. 75.) The complaint affirmatively states facts which dispense with the requirement of a certificate. (*B. Bank* v. *Mayor, etc.*, 63 N. Y. 332; *Russell* v. *Allerton*, 108 id. 288; *Vought* v. *Williams*, 120 id. 253; *Zimmerman* v. *Kinkle*, 108 id. 282; *Tilton* v. *Beecher*, 59 id. 176; *Marie* v. *Garrison*, 83 id. 14; *Milliken* v. *W. U. T. Co.*, 40 id. 403; *Brown* v. *Champlin*, 66 id. 214.) The General Term predicates its decision on two erroneous criticisms of the complaint, *i. e., first*, that it does not allege a demand or request upon the directors to give a certificate, and, *second*, that the proper construction of the phrase "all expenses, including necessary repairs," justified the "rebuilding" of the road, and the leasing of the bankrupt Watchung road, and charging the loss thereby incurred against the earnings of the defendant company, in exoneration of the Erie company, which had undertaken to operate the road. (*Berney* v. *Drexel*, 33 Hun, 34; *Burns* v. *Fox*, 113 Ind. 205; *Sharkey* v. *Mansfield*, 90 N. Y. 227; *U. P. R. Co.* v. *U. S.*, 99 U. S. 420.) The learned judge at Special Term based his decision on a totally different ground, to wit, that plaintiff had an adequate remedy at law. This is untenable. (Code Civ. Pro. § 488; *Wright* v. *Wright*, 54 N. Y. 437; *Hemingway* v. *Poucher*, 98 id. 281; *P. P. Co.* v. *Seabury*, 43 Hun, 611; *Pierson* v. *McCurdy*, 61 How. Pr. 134; *Stono* v. *Weiller*, 128 N. Y. 655; *Truscott* v. *King*, 6 id. 147,

165; *Green* v. *Milbank*, 3 Abb. [N. C.] 138, 149; *Town of Mentz* v. *Cook*, 108 N. Y. 504, 508; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 96 id. 444.) It is said "there is no allegation that the plaintiff owned his bonds at the time the pretended grievances were committed." This was unnecessary. (*Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157; *Jermain* v. *L. S. & M. S. R. Co.*, 91 id. 483; *Hopper* v. *Sage*, 112 id. 530, 534; *Seaton* v. *Grant*, L. R. [2 Ch. App.] 459.) It was not necessary to make a demand for an accounting. (*Marvin* v. *Brooks*, 94 N. Y. 71; *Barry* v. *M. K. & T. R. Co.*, 27 Fed. Rep. 1.) The court has jurisdiction of the person of the defendant corporation. (*Gurney* v. *G. T. R. Co.*, 37 N. Y. S. R. 557.) The court has jurisdiction of the subject-matter. (Code Civ. Pro. § 1780.) There is no defect of parties defendant. (Code Civ. Pro. § 452; *Heath* v. *Erie R. Co.*, 8 Blatchf. 347; *Cunningham* v. *Pell*, 5 Pet. 607, 612; *Hun* v. *Cary*, 82 N. Y. 65.) Causes of action for accounting against the defendant company and against the defendant King are properly joined. (108 N. Y. 288; *Garner* v. *Harmony Mills*, 6 Abb. [N. C.] 212; *Cunningham* v. *Pell*, 5 Pet. 607; *Barr* v. *N. Y., L. E. & W. R. Co.*, 96 N. Y. 444.)

*Cortlandt Parker, Jr.*, for respondents. The plaintiff has not in his complaint alleged facts sufficient to maintain either an action at law or in equity against the defendants. (*Oakley* v. *Morton*, 11 N. Y. 25; 1 Chitty on Pl. 309; *Green* v. *Reynolds*, 2 Johns. 209; *Smith* v. *Brady*, 17 N. Y. 173; *Stevenson* v. *Watson*, L. R. [4 C. P.] 148; *Clark* v. *Watson*, 18 C. B. [N. S.] 278.) The plaintiff below is not entitled to maintain an action in equity because no demand on the company to sue, refusal so to do or excuse for not making demand is alleged. (Pom. on Eq. Juris. 1095; Cook on Stock & Stock. § 740; *House* v. *Cooper*, 30 Barb. 157; *Greaves* v. *Gouge*, 69 N. Y. 154.) The court below was right in holding that the plaintiff below has shown no cause of action in equity. (*Marvin* v. *Brooks*, 94 N. Y. 71; 1 Story on Eq. Juris. § 459; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Trist* v. *Child*, 21

Wall. 441; *Uhlman* v. *N. Y. L. Ins. Co.*, 109 N. Y. 421.) The complaint shows no legal case. (*Nichols* v. *E. R. R. Co.*, 110 U. S. 296; *Day* v. *O. & L. C. R. R. Co.*, 107 N. Y. 129.)

*Charles Steele* for respondent King. Doubtful pleadings must be construed against the pleader as regards the substance of the pleading. (*Clark* v. *Dillon*, 97 N. Y. 370, 373; *Cohn* v. *Goldman*, 76 id. 284; *B. C. Inst.* v. *Bitter*, 87 id. 250, 256; *Bogardus* v. *The Company*, 101 id. 328, 337; *Bonnell* v. *Griswold*, 68 id. 294, 298; *Cooke* v. *Warren*, 14 Wkly. Dig. 50; *City of Buffalo* v. *Holloway*, 7 N. Y. 493, 498; *Taylor* v. *A. M. Ins. Co.*, 2 Bosw. 106, 111, 116; *Butler* v. *Viele*, 44 Barb. 166; *Koop* v. *Handy*, 41 id. 454; *Whittlesey* v. *Delaney*, 73 N. Y. 571.) The claim is merely that the directors have no right to incur such expenses as are mentioned in the complaint as against the holders of the income bonds, the plaintiff's theory being, apparently, that the net earnings of the company constitute a trust fund for the payment of interest upon the income bonds, and that the terms of the bond operate to create an equitable assignment of that fund. But the plaintiff has overlooked what is the well-settled law of this court, that an agreement to pay a debt out of a particular fund gives no lien upon the fund, nor does such an agreement constitute an equitable assignment thereof. (*Williams* v. *Ingersoll*, 89 N. Y. 508; *Christmass* v. *Russell*, 14 Wall. 69, 84; *Trist* v. *Child*, 21 id. 441; *Spies* v. *C., etc., R. R. Co.*, 40 Fed. Rep. 34.) The complaint does not state facts sufficient to constitute a cause of action. (*Arnold* v. *Angell*, 62 N. Y. 508; *Smith* v. *Bodine*, 74 id. 30, 34; *B., E. & C. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 123 id. 316; *Cole* v. *K. L. Ins. Co.*, 23 Hun, 255; *Paulsen* v. *Van Steenbergh*, 65 How. Pr. 342; *Belknap* v. *N. A. L. Ins. Co.*, 11 Hun, 282; Morawetz on Corp. § 782; *N. Y., L. E. & W. R. R.* v. *Nickals*, 119 U. S. 296; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609.) In no case could the plaintiff sustain his action without alleging and proving a demand upon the directors to make a certifi-

cate that interest was payable and their refusal to comply with such demand. (*Clark* v. *Watson*, 18 C. B. [N. S.] 277; *Smith* v. *Brady*, 17 N. Y. 173; *U. S.* v. *Robeson*, 9 Pet. 327; *Wyckoff* v. *Meyers*, 44 N. Y. 143, 145; *Noland* v. *Whitney*, 88 id. 648; *Beinhauer* v. *Gleason*, 15 N. Y. S. R. 227; *Hawes* v. *Oakland*, 104 U. S. 450, 461.) The complaint contains no allegation that the company has been requested to sue the directors, and has refused to do so. (*Greaves* v. *Gouge*, 69 N. Y. 154; *Hawes* v. *Oakland*, 104 U. S. 450; *Barr* v. *N. Y.*, *L. E. & W. R. R. Co.*, 96 N. Y. 444; *Brinckerhoff* v. *Bostwick*, 88 id. 52.) There is no allegation in the complaint that the plaintiff was the owner of his bonds at the time the alleged grievances were committed. (*Butt* v. *Cameron*, 53 Barb. 642; *Vose* v. *Grant*, 115 Mass. 516.) The court is without jurisdiction. (*Merrick* v. *Van Santvoord*, 34 N. Y. 268; *Huntington* v. *Nicoll*, 3 Johns. 596; *Gloucester* v. *Greene*, 24 N. J. Eq. 747.) Causes of action are improperly united in the complaint. (*Greaves* v. *Gouge*, 69 N. Y. 154.)

Andrews, Ch. J. The main proposition upon which this action is sought to be maintained is that the relation created between the New York & Greenwood Lake railway and the holders of the income bonds, in respect to the earnings of the railroad, was fiduciary, and that, under the general equitable rule which permits a *cestui que trust* to maintain an action against the trustee for an accounting in respect to the trust fund, the plaintiff may maintain this action, without showing any misappropriation or wrong doing by the company or its directors. This proposition upon the facts disclosed in the complaint fails, we think, in its primary and essential assumption, that a trust relation between the company and the bondholders was created by the contract between the parties.

The obligation of the company to pay the principal of the bonds at maturity was absolute, but it assumed to pay the interest only out of the earnings of the company. The *proviso* which follows the covenant in respect to the payment

of interest, had two general objects, viz., to limit the scope of the prior general covenant to pay interest on bonds out of the earnings, to such earnings as should be made during the six months' period, or such as should have accumulated during the current year, " over and above all expenses, including necessary repairs," and next to constitute the board of directors of the company the tribunal to determine whether there were earnings in excess of the charges first to be paid, applicable to the payment of interest. The language is as follows : " Provided always, nevertheless, that no more interest shall be payable by virtue hereof than shall be certified by the board of directors for the time being, to have been by said corporation earned over and above all expenses attending necessary repairs during the six months ending one month before such time fixed for such half-yearly payments, or theretofore to have accumulated during the current year so as altogether to make enough to pay at the rate of six per cent per annum, and in default of said certificates, no interest shall be payable." In substance, the current interest was to be paid out of the current earnings, and then so far only as the board of directors should certify that interest had been earned " over and above all expenses, including necessary repairs." The claim that the contract, by designating a fund out of which the interest was to be paid, operated as an equitable assignment of the fund so designated to the bond creditors, or created an equitable lien thereon in their favor, so that when any sum had been earned applicable to the payment of interest, it constituted a trust fund in the hands of the company for the benefit of the bondholders, is opposed to the authorities in this state. This is not the case of the administration in a court of equity of the estate of an insolvent corporation. If that was the condition and the question was presented as between bond creditors and other creditors of the corporation, as to the distribution of surplus earnings specially devoted by the contract with the bond creditors to the payment of interest on the bonds, it may be that in that case the court would

award to the bondholders an equitable preference by reason of the contract. But the question here is between a solvent corporation and the bondholders, and the only ground in support of the claim that a fiduciary relation was established by the contract between the corporation and the bondholders, or that the surplus earnings became a trust fund in the hands of the corporation for the benefit of the bondholders, is the promise of the corporation implied in the contract, that when the existence of surplus earnings was ascertained and certified by the board of directors, it would apply them to the payment of interest on the bonds. The substance of the contract between the corporation and the bondholders is that the interest should be paid out of a particular fund, when it should come into existence and be ascertained in the manner provided in the contract. The earnings of the corporation when received would, of necessity, become the property of the corporation. They might be wholly absorbed in paying expenses and repairing and operating the road. If there was a surplus beyond what was required for these purposes, ascertained as provided in the contract, the corporation obligated itself to apply it to the payment of interest on the bonds. But until the surplus was ascertained and applied by the corporation to the payment of interest, it remained the absolute owner of the fund, and it was subject to disposition for any corporate purpose by the board of directors. The corporation was, by its contract, obligated to apply it to the payment of interest on the bonds, and a breach of the contract would subject it to liability to the bondholders, and such remedies would be open to them as the law affords for breach of contract in other cases. But the bondholders acquired no title, legal or equitable, to the fund itself. A disregard of the contract by the corporation, or a diversion of the surplus to any other purpose, would be a flagrant breach of confidence reposed in the corporation by the bondholders. But the rights and obligations of the parties rested in contract. There was no appropriation of the fund out of which

the interest was to be paid, in any sense which worked a transfer of the legal or equitable title thereto, to the bondholders, when it should come into existence and before it had been set apart by the action of the directors to the payment of interest. It is the settled doctrine in this state "that an agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund, or operate as an equitable assignment thereof." (EARL, J., *Williams* v. *Ingersoll*, 89 N. Y. 508, and cases cited.) In *Trist* v. *Child* (21 Wall. 441), the court, referring to this subject, said: " But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an application of the fund *pro tanto*, either by giving an order, or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor, without the further intervention of the debtor." The question has usually arisen where the debtor promised his creditor to pay his debt out of a claim he held, or which should accrue in his favor against a third person, the primary liability of the debtor continuing.

In this case, the promise to pay the interest on the bonds out of surplus earnings, when the amount was ascertained, was made at the inception of the bonds, and was the security the bondholders had for its payment, no general liability therefor being assumed by the corporation. But these circumstances do not, we think, distinguish the case in principle from the cases cited. The corporation was bound to act in the utmost good faith towards the bondholders. They relied, as they had a right to rely, upon its faithful performance of the contract, and if it failed to apply the surplus when certified, or if its board of directors wrongfully refused to certify, when there was a surplus applicable to the payment of interest, an action would lie against the corporation in behalf of the bondholders, for damages, measured by the amount of interest of which they had been wrongfully deprived. This court, in *Boardman* v. *Lake Shore & Mich. S. Railway Co.* (84 N. Y. 157), sustained a judgment which enforced

a contract between the company and the holders of guaranteed stock, to make preferential dividends out of the net earnings, but there is no intimation in the opinion that the holders of such stock acquired by force of the contract an equitable lien on the earnings, or that the agreement operated as an equitable assignment of the fund out of which the dividends were to be paid. The case of *Uhlman* v. *New York Life Ins. Co.* (109 N. Y. 421), which dealt with the relation of tontine policyholders to the insurance company, where the contract upon which it was claimed that a fiduciary relation was created between the company and the holders of such policies, as to the tontine fund, was stronger in support of the claim made in that case than is the contract upon which the similar claim is made in this case, the court rejected the claim made, and held that the relation was that of debtor and creditor only. Our conclusion upon the point now under consideration is, that this action cannot be maintained on the theory that there was a fiduciary relation created by the contract between the New York & Greenwood Lake Railway Company and the bondholders, in respect of the fund out of which the interest was payable. The claim of the bondholders under the contract is legal and not equitable, and if any right to equitable relief in the nature of an accounting exists, it must be found in circumstances outside of the contract relation between the parties.

It remains to consider whether the complaint discloses any breach of the contract between the defendant corporation and the bondholders. Unless facts are stated showing that the contract has been violated by the corporation, there can be no ground for either legal or equitable relief. In ascertaining the meaning of the contract, the same rules of construction apply as in other cases. The words are to be interpreted according to their natural and legal import. No strained construction is to be placed upon them to meet a supposed hardship, or to relieve either party from a situation which, if it had been foreseen, might have been provided for, but for which no provision was made. If an ambiguity exists in any

of the terms of the contract, resort may be had to circumstances constituting the *res gestœ*, which tend to explain their meaning.

It is manifest that as the bondholders were, by the contract, to receive interest only in case there were earnings of the corporation remaining "over and above all expenses, including necessary repairs," any application of the earnings to any purpose other than the purposes embraced within the phrase quoted, before reserving sufficient to pay the interest on the bonds, would constitute a breach of the contract. We assent to the argument that the restriction of the right of the corporation to apply the gross earnings to certain designated purposes, was an essential element of the security of the bondholders. The bonds were offered to the public and were purchased upon the faith of the contract therein stated. The security for the payment of interest on the bonds was at best precarious, and although it may be assumed that the price of the bonds in the market was affected by this circumstance, it is but the dictate of obvious justice that such security as was afforded should not be permitted to be impaired by dealings of the corporation with the earnings, not justified by the fair construction of the contract with the bondholders. But the point now before us is whether the complaint discloses that the corporation has received earnings applicable under the contract to the payment of interest, which it either wrongfully retains and refuses to apply, or has applied to purposes not within the fair meaning of the words, "all expenses, including necessary repairs."

There is a question somewhat preliminary which will first be noticed. It is claimed, in behalf of the defendant, that assuming that earnings have been made applicable to the payment of interest on the bonds, it is by the contract a condition precedent to the right of the bondholders to maintain an action, that the board of directors should certify to the fact and the amount, the language of the bonds being, "in default of such certificates no interest shall be payable." This point is, we think, sufficiently met by the averment in the

complaint that the "board of directors have wrongfully neg-
lected and refused to certify that said interest, or any interest
whatever, has at any time been earned," which follows a
general averment of the receipt of earnings applicable to the
payment of interest. It was necessary for the plaintiffs to
show that the required certificate had been made, or had been
demanded and wrongfully refused. It would be a very
unreasonable construction of the contract that the bond-
holders are concluded by the omission of the board of directors
to certify, although there were earnings in excess of the fair
charges against them, applicable to the payment of interest.
The wrongful withholding of a certificate when demanded
satisfies the condition precedent, and this is especially true
where the alleged condition precedent is some act of the party
who is liable to pay. In such case his wrongful inaction is no
obstacle to a recovery. (*Doll* v. *Noble*, 116 N. Y. 230, and
cases cited.) The allegation of refusal to make the certificate
implies a prior demand, and on demurrer is equivalent to an
allegation of demand and refusal. (*Marie* v. *Garrison*, 83 N.
Y. 14; Abbott's Trial Brief, § 220.).

But we concur in the opinion of the General Term, that the
complaint is fatally defective in that it does not show that
there were earnings applicable to the payment of interest on
the bonds, which had either been retained by the corporation
or applied to other purposes. The averment in the 10th
paragraph in the complaint, that earnings had been made by
the corporation " over and above its operating expenses, includ-
ing necessary repairs and including all expenses properly
chargeable or payable out of gross earnings," sufficient to
pay the interest, and the averment in the 11th paragraph, that
the "legitimate operating expenses of the corporation, includ-
ing necessary repairs and all other expenses properly charge-
able," etc., before paying interest, did not exceed seventy per
cent of the gross receipts, standing alone, are simply averments
that in the opinion of the pleader the expenses "properly
chargeable," when deducted from the gross earnings, would
leave sufficient to pay the interest. If the pleader had stopped

with these averments, we think the allegations would have been plainly insufficient to show that there were earnings applicable to interest. The question, what expenses were "properly chargeable," is a question of law, and the necessary facts should have been averred, so that the court could see that the company had appropriated earnings to purposes excluded by the language of the bonds. The pleader, apparently recognizing the necessity, proceeded in the latter part of the 11th paragraph to specify the instances of misapplication, prefacing the specification with the language : "Among other diversions," etc. The pleading is, we think, to be treated as if the acts specified were the grounds of the complaint of misapplication and diversion which the plaintiff charges. It is to be observed that it was not the intention of the parties to the contract to withdraw the general management of the affairs and business of the corporation from the board of directors. The power of control by the board was left unimpaired up to the point that its exercise did not interfere with the rights of bondholders to have the earnings applied to paying the interest on the bonds after defraying "all expenses, including necessary repairs." The fullest discretion was reposed in the board of directors consistent with the limitation for the benefit of the bondholders, and it was left to the board to ascertain and determine whether any earnings had been made applicable to the payment of interest. The board was bound to act in good faith, but any expenditures incurred which by fair construction came within the permitted charges, were conclusive upon the bondholders. It was for the board to determine, in the first instance, what repairs were necessary, and a mistake in judgment as to the necessity or extent of repairs directed, would afford no ground of complaint by the bondholders. The court could not review this discretion, provided there was room for difference of opinion as to their wisdom or necessity. The application of earnings to re-building the road might in many cases constitute necessary repairs. The improvement of the roadway, the re-laying of the track with new rails, the erection of new buildings, bridges or structures, the construction of

new sidings, and the general improvement of the road, to insure its safety, and to accommodate a growing business, may constitute necessary repairs, and the board of directors, acting in good faith, might so determine, and the contract does not withdraw these matters from the determination of the governing body of the corporation. There is no charge of bad faith, nor that the corporation or the board have applied any of the earnings to private uses. The allegation in the complaint that various acts enumerated were "wrongful" or "improvident," are not allegations of fact, but of law, and are not admitted by the demurrer, and the allegation that the "re-building" and the "building of new railway and structures," were not necessary for the maintenance and operation of the railway, does not show that what was done did not constitute "necessary repairs," and so was within the discretion of the board of directors.

The leasing of the Watchung railroad by the defendant corporation is charged as having entailed a loss in each year to the lessee, "amounting in 1888 to $10,474.02, and in 1889 to $9,493.98." It is not claimed that the lease was not authorized by the charter of the defendant corporation, nor does it appear that the direct loss was not more than made up by the advantage derived by the main line from the transaction. The general question of the relation between "income bondholders" and a railroad corporation, under a contract quite similar to the one now in question, was exhaustively considered by this court in the case of *Day* v. *Ogdensburg & L. C. R. R. Co.* (107 N. Y. 129), and the opinion of Judge DANFORTH in that case is very pertinent upon the question raised by this discussion, as to what may be done by a board of directors in charging income, consistently with the rights of the bondholders.

Our conclusion is that the demurrer to the complaint was well taken and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.