PATRICK ET AL. v. THE COLORADO SMELTING COMPANY.

1. CONDITIONAL PROMISE.
When the promise declared on is in part conditional, and the performance or happening of the condition upon which the promise is to become absolute is not averred, the complaint is not sufficient, as to such conditional part of the promise, to sustain a recovery.

2. PLEADING—WRITTEN CONTRACT.
Where an action is brought upon a written contract, and the writing is set forth in *hæc verba* in the complaint, such writing controls any allegation purporting to state the effect of the contract as a legal conclusion.

3. SMELTING CONTRACT—SALES.
A contract to deliver a certain quantity of sulphide ores (grade or quality not specified) to a smelting company for the purpose of having the metal values contained therein extracted and reduced to a marketable condition, for the benefit of the owner of the ores, after compensating the smelting company for the labor and expense of smelting, is not a contract for the sale of the ores.

4. MEASURE OF DAMAGES.
Where parties agreed to furnish a certain quantity of sulphide ores to a smelting company for treatment, but the contract did not specify or provide for any particular body of ore, or ores of any particular grade, quality, or value, and the parties failed to furnish a portion of the ore as agreed; *held*, that the contract was purely executory, and that the smelting company could recover no more than nominal damages for a breach thereof, unless they should allege and prove the profits they could have realized from the smelting of such ores of whatever grade based upon the smelting charges to be paid therefor.

*Appeal from the District Court of Lake County.*

ACTION for breach of contract. Trial and judgment for plaintiff. Defendants appeal.

### AMENDED COMPLAINT.

" That the plaintiff is a corporation duly organized and existing under and by virtue of the laws of the state of Colorado, and authorized to carry on and engaged in carrying on the general business of buying, handling and refining ores in the county of Pueblo, state of Colorado, and elsewhere in said state of Colorado, and that plaintiff is now and was at all of the times hereinafter mentioned authorized to carry on and engaged in carrying on the general business of buying, handling, smelting and refining ores in the said county of Pueblo and elsewhere in the said state of Colorado.

" That the defendants are associated in transacting business as mining copartners under the name and style of the Col. Sellers Mine, doing business in the county of Lake, state of Colorado, and that said defendants are now and at all of the times hereinafter mentioned were so associated in business under said name, and operating said mine, and engaged in mining and selling ores in the said state of Colorado.

" That on the 12th day of January, A. D. 1884, the defendants herein, by and through the defendant W. F. Patrick, as their general manager, and as the general manager of the said Col. Sellers Mine, and who was then and there duly authorized for that purpose, did make and enter into a written agreement to and with the plaintiff herein, wherein and whereby said written agreement the said defendants did contract to sell and deliver to the plaintiff twelve thousand (12,000) tons of sulphide ores, the product of a certain mine known as the Col. Sellers Mine, said mine being then and there owned by said defendants and situate in said county of Lake and state of Colorado, the terms and provisions of which written agreement upon the part of said defendants was thereafter, to wit, on the 18th day of January, A. D. 1884, duly accepted by the plaintiff herein in writing, the said acceptance being made by and through A. Eilers, who was then and is now, the general manager of the plaintiff herein, duly authorized thereto by the plaintiff to execute

the said acceptance aforementioned, which said written agreement upon the part of said defendants for the sale of said ores is in the words and figures as follows, to wit:

"'LEADVILLE, COLO., Jan. 12, 1884.

"'A. EILERS, ESQ., General Manager, South Pueblo, Colo.:

"'*Dear Sir*:—In regard to your proposition made to Mr. Franklin Ballou for 1,000 tons of sulphide ores per month, or 30 tons per day, for the term of twelve months, we beg leave to state that we will accept such a contract for the period of eight and one half months, commencing upon the expiration of the "Col. Sellers Lease," which occurs on the 30th day of April next, 1884, and should the tenants of the Col. Sellers leased ground be unable or fail to furnish you in the interim with ore at the rate of 30 tons per day or 1,000 tons per month, we will assume the responsibility of making good the deficit, with the proviso that orders already on our books requiring the delivery of 700 tons per month shall receive our first consideration. We add this clause from no apprehension of inability to meet your wants, but merely as a precaution against unforeseen causes which might arise in such a lapse of time, and over which we may have no control.

"'The ore to be sampled in 100 or 50 ton lots, as we may elect.

"'Price list delivered on cars in Leadville as follows:

"'Lead on basis of 25c per unit when above 4c in N. Y. and under 4.25, and add or deduct 5c per unit for each advance or fall of ¼c in New York.

"'No pay for lead if 10 per cent or under.

"'Silver 90 per cent of New York quotation.

"'Smelting charges $21.50 per ton.

"'Zinc standard 12 per cent. Charge 50c per unit for each per cent above 12 per cent.

"'Mr. Ballou informs us you did not intend to be in the market for this class of ore until towards the middle of February, but as a concession, have consented to commence receiving and sampling at once, deferring payments until your

roasters are erected, which will require three or four weeks. The probabilities are we shall not have to call on you for money for the first thirty days, but should it become necessary then the accommodation that you are willing to extend to the lessees will be satisfactory to us. To avoid all uncertainty in this matter it will be best for us to add that if the lessees decline to receive your offer for the time remaining on their lease, we will accept it for the full term of one year, from say the 15th instant.

" ' Yours truly,

" ' W. F. PATRICK,

" ' Mgr. Col. Sellers Mine.'

" And which written acceptance on the part of said plaintiff is in words and figures as follows, to wit :

" ' SOUTH PUEBLO, COLO., Jan. 18, 1884.

" ' W. F. PATRICK, ESQ., Manager Col. Sellers Mine, Leadville :

" ' *Dear Sir :*—Upon my return to this place I find your favor of January 12th, containing your acceptance of my proposition for 1,000 tons of Col. Sellers ore per month for the period of one year from Jan. 15th.

" ' To close this matter formally, I herewith agree to the terms as laid down by you in said letter of Jan. 15th.

" ' Yours truly,

" ' A. EILERS, G. M.'

" That in pursuance of said contract of sale as aforementioned, the said defendants did thereafter, during the said year 1884, commence the delivery of said ores thereunder, and did at various times during the period of one year from the 15th day of January, 1884, deliver to the plaintiff at the said county of Lake certain portions of the said sulphide ores, the product of the said Col. Sellers Mine.

" That during the time specified in the said agreement, to wit : From January 18, 1884, to January 19, 1885, the said defendants delivered to the plaintiff under said contract of sale four thousand eight hundred and twenty-eight (4,828)

tons of the said sulphide ores, the product of said mine; and thereafter, during the year 1885, the plaintiff and defendants mutually agreed to extend the time for the completion of the said contract of sale and the delivery of the said remainder of the said ores over and above the said four thousand eight hundred and twenty-eight (4,828) tons, and in pursuance of the said extension the said defendants continued to deliver portions of the remainder of said ores so undelivered, from time to time, and the plaintiff accepted the said deliveries under said contract, the same continuing to be made up to and until the second day of May, 1887, during which period last aforementioned the defendants delivered under said contract of sale, and the plaintiff accepted thereunder, three thousand one hundred and seventy-two (3,172) tons additional, making a total delivery by the said defendants under said contract of sale up to and including the said second day of May, 1887, of eight thousand (8,000) tons of said ores, leaving a balance undelivered upon said contract of four thousand (4,000) tons.

"Plaintiff further avers that the said defendants failed, refused and neglected to make any further deliveries under said contract of sale after the said second day of May, 1887, and declined and refused after the date last aforementioned to fulfill and further complete said contract of sale, although often requested so to do by the plaintiff, and the said defendants have never delivered or offered to deliver to the plaintiff herein the said remaining four thousand (4,000) tons of said ore, or any part thereof, which should have been delivered under the terms of said contract, and the said extension thereof, although the plaintiff was ready, willing and anxious that said contract should be completed and carried out upon the part of said defendants, and it was always ready, willing and able to receive and make payment for the said remaining four thousand (4,000) tons of said ore under and pursuant to the terms of said contract and the said extension thereof.

"That ever since the execution of the said contract of sale the plaintiff has performed all and singular the terms and

conditions of the said contract by it to be observed, fulfilled
and performed, and the said failure and refusal of the defend-
ants to deliver the said remaining four thousand (4,000) tons
of said ore was not caused by any wrong or fault upon the
part of the plaintiff.

" Plaintiff further avers that after making of said contract
and during the time within which the said defendants should
have delivered the said remaining four thousand (4,000) tons
of said ore, under the terms and provisions of said contract
of sale and the extension thereof as aforesaid, and at the time
when the said defendants so failed and refused to make any
further deliveries of said ore, to wit: on the second day of
May, 1887, the market value of the class of ores mentioned
in and being the subject-matter of the said contract of sale,
increased and enhanced in value over and above the prices
fixed in said contract for which the plaintiff was to pay there-
for per ton, and that said increase and enhancement in said
market value of said ores during the period and at the time
last aforementioned, amounted to the sum of ten dollars ($10)
per ton, whereby the plaintiff sustained damages by reason
of the failure upon the part of the said defendants to deliver
the said four thousand (4,000) tons of ore as aforesaid, in
the sum of forty thousand dollars ($40,000), said sum being
the increased and enhanced market value of the said remain-
ing four thousand (4,000) tons of ore as aforementioned.

" Plaintiff further avers that by reason of the defendants'
failure to perform and complete their contract as aforesaid,
the plaintiff has been deprived of the treatment of the said
four thousand (4,000) tons of sulphide ore, and has been
thereby deprived of the profits which it could have realized
from the treatment of said ores, as well as other profits aris-
ing from the purchase of the said ores, in the sum of forty
thousand dollars ($40,000).

" Wherefore, plaintiff demands judgment against said de-
fendants in the sum of forty thousand dollars ($40,000), and
for its costs herein."

General denial of the several averments of the complaint. Finding and judgment for plaintiff in the sum of $12,796.

Messrs. PARSONS & BALDWIN and Mr. C. S. THOMAS, for appellants.

Mr. JOHN M. WALDRON and Mr. CHAS. E. GAST, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

Two principal objections to the judgment are all that need be considered on this appeal.

1. Defendants contend that the damages awarded are largely in excess of what the averments of the complaint will sustain.

The contention of plaintiff (The Colorado Smelting Company) is that defendants undertook to deliver ores to plaintiff at the rate of 1,000 tons per month, or 30 tons per day, for the period of one year; that only 8,000 tons were delivered, leaving 4,000 tons undelivered, and that plaintiff sustained damage to the amount of $10 for each ton of ore not delivered under the contract.

Defendants contend that the contract set forth in the correspondence is not absolute, except for the period of eight and one half months. Their contention is that the proposition in the letter of January 12, 1884, in respect to the period from January 15, 1884, to April 30, 1884, is conditional only, to the effect that defendants will furnish the ore *should the tenants of the Col. Sellers leased ground be unable or fail to furnish the same during said period;* and, further, that the proposition is also accompanied with the *proviso, that prior orders for ore shall be first filled by the defendants.* Again, defendants insist that the proposition at the close of said letter, to the effect that defendants will furnish the ore for the full term of one year, is accompanied with an " if," which

makes it conditional also.   This view seems to us the cor-
rect one.   The complaint does not aver the performance or
happening of any of the conditions upon which any of the
offers or promises of defendants were to become absolute for
said period of three and one half months.   1 Chitty's Pl.
(15th Am. Ed.) pp. 308–310.

2. It is true, in general terms, and as a matter of legal con-
clusion, the complaint states that defendants promised to
furnish 12,000 tons of ore to plaintiff; but this general allega-
tion is not borne out by the written correspondence set forth
in *hæc verba* in the complaint showing the real contract
between the parties.   The special matters thus set forth in
writing must be held to control the general allegation.   *Dil-
lon v. Barnard*, 21 Wall. 430 ; *Everett v. Drew*, 129 Mass. 150.

Concluding, then, as we must, that the complaint states an
absolute contract for the delivery of no more than 1,000 tons
per month, for the period of eight and one half months, that
is, for 8,500 tons only, and it appearing from the complaint
that 8,000 tons were actually delivered, it would seem that
damages to the amount of $12,796 could not have resulted
from the nondelivery of 500 tons.

3. The second objection is to the effect that, under the
allegations and evidence, nominal damages only should have
been awarded for the breach of contract sued on.

The theory assumed by the plaintiff company is that the
contract set forth in the complaint was a contract of bargain
and sale.   This theory was, we think, properly disposed of by
Judge Goddard at the conclusion of the trial.   His opinion,
*inter alia*, contained the following :

" Counsel for plaintiff insist that its damage is the dif-
ference between the market value of the ore undelivered on
May 2, 1887, and its value as fixed in the contract of Janu-
ary 15, 1884, upon the theory that the contract was for the
sale of the ore at a stipulated price per ton, and that the ore
had a market value.   Upon the trial, I was of the opinion
that the contract in question was not a contract of sale, and
that the ore did not have a market value.   In deference to

the views of counsel, the question was left open and an opportunity was given to present such evidence as they were of opinion would show or tend to show market value. Upon hearing the evidence and upon further consideration, I am satisfied of the correctness of the opinion I then entertained.

" The agreement in suit is not, in terms, and was not, within the contemplation of the parties, a contract for the sale of the ore mentioned therein. While it provides for the delivery and disposition of the ore, it prescribes no grade or quality, it fixes no stipulated price per ton to be paid therefor. It is rather an agreement for the handling and treatment of so much ore, upon such terms as will realize to the mine owner the metal value contained therein, after compensating the plaintiff for its labor and expense in extracting such values and reducing them to a marketable condition. These values may vary with each ton."

The views thus expressed by the trial judge seem to us correct. As we have seen, the contract sued on consists of correspondence between the parties. The contract is not for the delivery of certain specific property, nor for the delivery of any particular body of ore or ores; it was for so many tons of sulphide ores. Indeed, the correspondence of defendants nowhere specifies that the sulphide ores to be delivered should be the product of the Col. Sellers Mine; nor does it specify or provide for ores of any particular grade, quality, or value.

4. It would seem that counsel were in doubt as to whether the contract was one of bargain and sale, or whether it was a contract for the treatment of ores at certain specified charges, and so the amended complaint avers plaintiff's damages both ways; that is, damages by reason of being " deprived of the profits which it could have realized from the treatment of said ores, as well as other profits arising from the purchase of the said ores."

The contract was for the treatment of a certain quantity of ore to be delivered by defendant. The contract was purely executory. If it had been fully performed, plaintiff would of

course, have been entitled to recover the stipulated charges, if not already retained out of the product; and so, also, to recover for part performance, if the nonperformance of the residue was not occasioned by the plaintiff's own fault. But it is not claimed that plaintiff was not paid for the ores actually furnished and treated. The question for consideration then is: In a contract of this kind, what is the proper measure of the plaintiff's damages for the failure of defendants to furnish the ores for treatment? The contract being executory, and the ores to be furnished not being of any specified grade, quality, or value, the damages for nondelivery can have no relation to the quality or value of the undelivered ores, because such quality or value could not, without delivery, be determined. The contract called for the delivery, it is true, of sulphide ores, but no particular or specific sulphide ores were contracted for. The damages could not be based upon the lead or other metal to be retained by plaintiff, for it could not be determined, in the absence of delivery and treatment, what quantity of lead or other metal might be contained in the undelivered ores.

The fact that defendant furnished to other smelters sulphide ores from the Col. Sellers Mine, bearing a certain quantity of lead, was not a violation of their contract with plaintiff, for they did not agree that they would not furnish such ores to other smelters, nor did they agree that plaintiff should have the entire product, nor any of the product of the Col. Sellers Mine, for that matter. Hence, it cannot be assumed that the ore furnished to others was the particular ore to which plaintiff was entitled.

But it is said that it was competent for plaintiff to show profits accruing from the treatment of such ores, based upon the smelting charges of $21.50 per ton. This might be true, if such charges were to be paid in any event (a point we need not determine), *provided* the plaintiff company had alleged and proved the profits which could be realized by it from the smelting charges on such ores of whatever grade, but this the plaintiff company failed to do. Indeed, plaintiff's principal

witness testified that it was impossible to determine what the profits would be for smelting such ores unmixed with other ores.

Under the circumstances, therefore, we are of opinion that the contention of defendants is correct; that under the allegations and evidence nominal damages only should have been awarded in this case. The judgment of the district court is accordingly reversed, and the cause remanded.

*Reversed.*