FRANKLIN. VS BROWNING.

Opinion delivered October 5, 1901.

*1. Bills and Notes—Equitable Lien.*

> Where notes are executed and delivered reciting "for value re-
> ceived for wintering cattle branded NS; cattle wintered to
> stand good for the payment of this note, and is to be paid
> out of first shipment of said cattle," an equitable lien upon
> the cattle or proceeds is not thereby created, for there is not
> a sufficient identification of the property sought to be sub-
> jected to a lien; but the effect of such words in the notes is to
> create a promise to pay the debt out of a particular fund.

Appeal from the United States court for the Northern
district.

JOSEPH A. GILL, Judge.

Action by P. G. Browning against G. W. Franklin.
Judgment for plaintiff. Defendant appeals. Affirmed.

The appellee (plaintiff below) alleged that the ap-
pellant (defendant below) was indebted to him on April 27,
1895, in the sum of $480, and that on that day the defendant
transferred to plaintiff two promissory notes in satisfaction
of said indebtedness, and "absolutely guaranteed" the pay-
ment of the same. Said notes were as follows:

"380.00  Vinita, I. T., April 1st, 1895. Three months
after date I promise to pay to the order of G. W. Franklin
the sum of three hundred and eighty dollars. value received

for wintering cattle branded NS. Cattle wintered by G. W. Franklin to stand good for the payment of this note, and is to be paid out of the first shipment of said cattle, and to bear 10 per cent. interest from due.    N. Skinner."

This note is indorsed as follows:    "Pay to the order of P. G. Browning. Demand and notice waived. G. W. Franklin."

"$100.00    Vinita, I. T., April 1st, 1895. One day after date I promise to pay to the order of G. W. Franklin the sum of one hundred dollars, value received for wintering cattle branded NS. Cattle wintered by G. W. Franklin are to stand good for the payment of this note, and is to be paid out of the first shipment of said cattle, if not paid before that time, and is to bear 10 per cent. from date.    N. Skinner."

This note is endorsed as follows:    "Pay to the order of P. G. Browning. Demand and notice waived. G. W. Franklin."

There was a credit of $65 on one note, and plaintiff prayed judgment for $550.53, balance of principal and interest on said two notes. Defendant filed answer, and admitted that he was indebted to plaintiff as alleged on April 27, 1895, and that he transferred to the plaintiff the two promissory notes in satisfaction of said indebtedness, but denies that he "guaranteed absolutely" the payment of said notes, except as appears indorsed thereon, and that he was indebted to plaintiff in the sum of $550.53, or any other sum. Defendant alleges: That Skinner at the making of said notes was solvent, and that said notes were given for wintering about two hundred head of NS cattle, of which said brand there were about two thousand head, worth about $50,000. Said cattle were at that time in the Cherokee

Nation, and said notes were intended to, and did, secure to the defendant a lien on all of said NS cattle for the payment of said debt therein expressed. That said notes were indorsed by defendant to plaintiff with the understanding and agreement that plaintiff would protect and enforce said lien, and collect the amount of said notes when due out of said cattle, and subject them to the payment of said debt. That when said notes became due said cattle had not been removed from the Cherokee Nation, but plaintiff, disregarding defendant's right, and in violation of his agreement and of defendant's request to enforce said lien, wholly refused and neglected so to do, but permitted Skinner to ship said cattle out of the country, and said lien to be lost since which time Skinner has become insolvent, "all of which on part of the plaintiff constitutes in law and in fact a fraud upon said security and the rights of this defendant and a bar to his recovery in this cause." Defendant asks that his answer be taken as cross complaint, and case transferred to equity docket, and should court be of opinion that said lien was collateral to said debt, and was lost by plaintiff's negligence, it will order said notes canceled. On October 12, 1898, on motion of defendant before Judge Thomas, the case was transferred to equity docket. On the 12th day of February, 1900, before Judge Gill, "this cause coming on to be heard, by agreement of parties hereto all the pleadings and motions heretofore filed in this cause are withdrawn, except the complaint, and plaintiff's demurrer to answer and cross complaint filed March 11, 1899." The demurrer to answer was as follows: (1) That it does not state facts sufficient to constitute a defense to the complaint; (2) that it does not show that defendant is entitled to equit able relief. On February 16, 1900, before Judge Gill, "this cause came on to be heard upon the plaintiff's demurrer heretofore filed to the defendant's answer, filed as an answer and cross complaint; and, the questions of law arising thereon being heard, it is adjudged by the court

that said answer and cross complaint is insufficient, and that the demurrer thereto be sustained; and, · the defendant refusing to plead further, it is adjudged that said answer and cross complaint be dismissed, and that plaintiff have and recover of and from defendant the sum of $612, with interest from this date until paid at the rate of ten per centum per annum. To the sustaining of said demurrer, defendant, by his attorney, then and there excepted, and prayed an appeal, which was granted by the court."

*John B. Turner*, for appellant.

*James B. Burkhalter*, for appellee.

TOWNSEND, C. J. The appellant has filed two specifications of error as follows: "The court erred in sustaining the demurrer: (1) Because the answer filed as a cross complaint states facts sufficient to constitute a defense; (2) because the answer filed as a cross complaint states facts sufficient to authorize affirmative equitable relief." Does the answer state facts sufficient to constitute an equitable lien? The answer to this question will determine whether this case should be affirmed or reversed. The only agreement there is is in the notes, as follows: "Value received for wintering cattle branded NS; cattle wintered by G. W. Franklin to stand good for the payment of this note, and is to be paid out of the first shipment of said cattle." Hence it appears that the consideration of the notes was not "wintering cattle," and that the "cattle wintered" was to "stand good" for the payment, and the same to be paid out of the "first shipment" of said cattle. Now, if there was an equitable lien created here, what was it on? It certainly was on the "cattle wintered," for they were the ones that were to "stand good." But it does not appear from the notes how many cattle were "wintered." Therefore we are to look to the answer, and it says said

notes were given for "wintering" about 200 head." Is it
upon this "200 head" that the defendant claims a lien? It
seems not, for he further says, "of which said brand there
were about 2,000 head, and said notes were intended to, and
did, secure to the defendant a lien on all said NS cattle for
the payment of the debt therein expressed." Therefore it
clearly appears that defendant is seeking a lien on 2,000
head of cattle when only 200 head was to "stand good" for
the notes. This is an attempt to fix a lien on 1,800 head of
cattle that he did not winter, and which lien, if there was
any at all, was by the express terms of the note limited to
the cattle wintered, which by the answer was on 200 head.
It is not attempted by defendant in his answer to identify
the 200 head that were to "stand good." Is this in accor-
dance with the doctrine of equitable lien? "Every express
executory agreement in writing, whereby the contracting
party sufficiently indicates an intention to make some par-
ticular property, real or personal, or fund, therein described
or identified, a security for a debt or other obligation, or
whereby the party promises to convey or assign or transfer
the property as security, creates an equitable lien upon the
property so indicated. * * * The property intended to
be charged must be clearly identified or described." 13
Am. & Eng. Enc. Law, pp. 608, 609. "In order, however
that a lien may arise in pursuance of this doctrine, the
agreement must deal with some particular property, either
by identifying it, or by so describing it that it can be
identified, and must indicate with sufficient clearness an in-
tent that the property so described, or rendered capable of
identification, is to be held, given, or transferred as security
for the obligation. * * * The form or particular nature
of the agreement which shall create a lien is not very
material, for equity looks at the final intent and purpose,
rather than at the form; and if the intent appear to give or
to charge or to pledge property, real or personal, as a
security for an obligation, and the property is so described

that the principal things intended to be given or charged can be sufficiently identified, the lien follows." Pom. Eq. Jur. §§ 1235–1237. "The instrument creating the lien is not effectual unless it plainly designates the property to be charged, though only such an identification is required as is essential to an enforcement of the lien. * * * It is essential to an equitable lien that the property to be charged should be capable of identification, so that the claimant of the lien may say with a reasonable degree of certainty what property it is that is subject to his lien." Jones, Liens (2d Ed.) §§ 33, 34. We think that the 200 head were not sufficiently identified, and that it would have been impossible for a court of equity to have decreed the sale of the 200 head wintered by appellant, for the reason that the notes and answer, taken together, do not sufficiently designate what cattle were to "stand good" for the payment of these notes. While appellant alleges in his answer and cross bill that said notes were indorsed to appellee with the agreement and understanding that appellee "would protect and enforce said lien," it also appears by the express agreement in the notes that they were to be "paid out of the first shipment of said cattle." This agreement controls, and in Jones, Liens, § 32, it is said: "The intention must be to create a lien upon the property, as distinguished from an agreement to apply the proceeds of a sale of it to the payment of a debt." "A mere promise by a debtor to pay a debt out of a particular fund due him, as soon as he receives it, will not operate to give his creditor a lien upon that fund. Ford vs Garner, 15 Ind. 298; Rodick vs Gandell, 1 De Gex, M. & G. 763; Burn vs Carvalho, 4 Mylne & C. 690; Wright vs Ellison, 1 Wall. 16, 17 L. Ed. 555; Williams vs Ingersoll, 89 N. Y. 508; Trist vs Child, 21 Wall, 441, 22 L. Ed. 623; Christmas vs Russell, 14 Wall. 69, 20 L. Ed. 762; Dillon vs Barnard, 21 Wall. 430, 22 L. Ed. 673; Rogers vs Hosack's Ex'rs, 18 Wend. 319. Nor will a promise to pay a certain debt out of the proceeds of the sale of certain property (cat

tle) be a sufficient appropriation to create a lien thereon. Cook vs Black, 54 Iowa, 693, 7 N. W. 121." Notes to 13 Am. & Eng. Enc. Law, p. 609. The clause in said notes, "cattle wintered by G. W. Franklin to stand good for the payment of this note, and is to be paid out of the first shipment of said cattle," is an agreement on the part of Skinner, the maker of said notes, to pay them out of the first shipment of said cattle. We are therefore of the opinion that the cattle wintered were not sufficiently described and identified to create an equitable lien, and that a fair construction of the clause in said notes is that it was only intended to pay out of the first shipment the notes, and that no lien was contemplated.

Some other questions are discussed in the briefs of counsel, but, in our opinion, the answer filed as a cross complaint did not state facts sufficient to constitute a defense, and therefore the judgment of the court below should be, and is, affirmed.

CLAYTON and RAYMOND, JJ., concur.