EAST SIDE PACKING CO. v. FAHY MARKET.

COMERFORD et al. v. EAST SIDE PACKING CO. et al.

Circuit Court of Appeals, Second Circuit. March 5, 1928.

No. 177.

1. Assignments ⊜⇒52—"Equitable assignment" requires intent to pay out of particular fund, and transfer requiring payment, though forbidden by assignor.

An agreement to pay out of particular funds, however clear in terms, does not constitute an "equitable assignment"; it being necessary that there be an intent to do so, and its execution and transfer of such character that fund holder can safely pay, and is compelled to do so, even though forbidden by assignor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equitable Assignment.]

2. Liens ⊜⇒22—Executors of sole stockholder of corporation held, under evidence, not entitled to claim against receivers as equitable lien for money loaned corporation.

Evidence supporting claim filed against receivers appointed for conservation and distribution of assets of corporation held insufficient to warrant claim of executors of sole owner of stock for advances made after his death as an equitable lien.

3. Taxation ⊜⇒531(2)—Mere volunteer, paying tax, cannot be subrogated to tax lien, without express agreement.

A mere volunteer, who pays a tax, cannot be subrogated to a tax lien, though one paying tax without interest to protect, under express agreement that he be subrogated, has a lien therefor.

4. Executors and administrators ⊜⇒106—Executors, loaning money to corporation in violation of law, may recover against receiver sum paid for taxes and traceable to real property (Decedent Estate Law N. Y. § 111).

Where executors for sole stockholder of corporation loaned money thereto, in violation of Decedent Estate Law N. Y. (Consol. Laws, c. 13), § 111, they were entitled to recover, against receiver subsequently appointed in conservation proceedings, sum paid for taxes which was traceable to real property.

Appeal from the District Court of the United States for the Western District of New York.

Conservation proceeding by the East Side Packing Company against Fahy Market, wherein James G. Comerford and another were appointed receivers. From a decree denying preference to claim of James G. Comerford and another, as executors of the last will and testament of James G. Comerford, deceased, claimants appeal. Modified.

James M. E. O'Grady, of Rochester, N. Y., for appellants.

John D. Lynn, of Rochester, N. Y., for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. A bill was filed by the complainant against the defendant for conservation and distribution of assets of the defendant. Receivers were appointed and claims were filed. A special master was also appointed, to take proof of the claims and to report. The appellants filed their claim, a preference was granted them by the special master, but later this preference was disallowed by the district court. However, the claimants were allowed to share with other general creditors.

Appellants are executors of the will of James G. Comerford. One is a son of the deceased. The stock of the defendant, a wholesale and retail provision house, was owned by his father, who conducted its business, and after his death the appellants continued to do so, retaining the ownership of the entire capital stock as executors. As executors, they loaned the defendant $15,000, upon the understanding that the loan would be repaid out of a mortgage negotiated to be placed on defendant's real property. The money thus advanced was used to pay defendant's debts, including some taxes on this real property. The mortgage was never placed, and no money was received from the loaning bank, because receivers were first appointed. There is no writing of the contemplated repayment of such money, if it was secured by the Fahy Market.

The claim filed by the executors states that the "advances by the executors of the Comerford estate to the market are made for the reason that the estate was at that time the owner of the entire capital stock of Fahy Market, and because it was promised and agreed that this $15,000 would be immediately repaid from an increased loan upon the corporation's real estate, amounting to

the sum of $15,000, which loan had been arranged for and granted," and further that the executors "claim an equitable lien upon the equity of redemption in the real estate covered by the mortgage, and for a preference for the said advance and loan and repayment to the executors of the said amount and interest before any other sum is paid to any other creditor."

[1] The record discloses that this promise to repay, out of such funds procured by placing the mortgage, rests entirely upon an oral understanding. Both executors, who are the claimants, said they paid the money over with the understanding at the time that the money would be returned to the estate when the mortgage was completed. An equitable assignment or equitable lien is said to be created in favor of the appellants. The courts have recognized that an agreement to pay out of the particular fund, however clear in terms, is not an equitable assignment. To constitute an equitable assignment, the intent to do so and its execution are indispensable. The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. To do so is fatal to the claim. There must be a transfer of such a character that the fund holder can safely pay, and is compelled to do so, even though he be forbidden by the assignor. Christmas v. Russell, 81 U. S. 69, 20 L. Ed. 762. This contemplates a fund; indeed, there must be designated a fund from which payment must be made. Dillon v. Barnard, 21 Wall. (88 U. S.) 430, 22 L. Ed. 673; Spellman v. Bankers' Trust Co. (C. C. A.) 6 F.(2d) 799; Thomas v. N. Y. & G. L. Ry. Co., 139 N. Y. 163, 34 N. E. 877.

In Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865, where the Supreme Court had occasion to consider the question of the existence of an equitable lien, certain bonds were in the hands of a third party to secure an indebtedness to Walker. A letter was written, stating that any indebtedness that was owing to Walker at any time should be paid before the return of the bonds, or the value thereof, and that the bonds, or value thereof, "are at the risk of the business of Lloyd & Co., so far as any claim you may have against said Lloyd & Co. is concerned." The court pointed out that this language designated the bonds or their value as a security for the debt of Walker, and that "to dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien."

In Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, which the Supreme Court referred to in Walker v. Brown as fully reviewing the English and American authorities on this subject, it was said: "The learned judge who heard this cause in the Circuit Court rested the decree upon the proposition of law that, 'if a debtor by a concluded agreement with a creditor sets apart a specific amount of a specific fund in the hands, or to come into the hands, of another from a designated source, and directs such person to pay it to the creditor, which he assents to do, this is a specific appropriation binding upon the parties and upon all persons with notice who subsequently claim an interest in the fund under the debtor.'" It asked the question, Was there an agreement of the character indicated in this statement? and answered it in the affirmative.

In Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047, a broker agreed to buy a stock for a client, who had supplied him with the money for the purchase. Before delivering it, he became a bankrupt, and there were found in his possession certain shares of the same stock, not set apart or designated as the property of any client, and the court held that these shares should be considered the claimant's property.

In Greey v. Dockendorff, 231 U. S. 513, 34 S. Ct. 166, 58 L. Ed. 339, accounts had actually been assigned by formal written assignments by a bankrupt to secure advances from time to time in money to carry on his business. The court said the question was whether the money received on these accounts belonged to the trustee in bankruptcy or the assignee of the account. Under the circumstances, it was held that they belonged to the assignee.

[2] Whether or not an equitable lien has been established depends upon the facts peculiar to each case. It may well be that the executors here turned over the money upon the reliance that it would be returned when the funds were received from the mortgage then being negotiated; but that was insufficient to create a lien. No fund ever came into existence. On the other hand, there was every reason for the executors to advance the money in an effort to save the equity in the property and maintain the value of the stock of the Fahy Market, which they held. The evidence does not warrant supporting the claim of an equitable lien.

[3] It is argued that, since part of the loan was used to pay taxes due on the real prop-

erty, a preference should be granted to this extent. A mere volunteer, who pays a tax, cannot be subrogated to a tax lien. One who pays a tax, even though without any interest to protect, but under express agreement that he be subrogated, has a lien. Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 S. Ct. 625, 31 L. Ed. 537; Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190; In re Baltimore Pearl Hominy Co. (C. C. A.) 5 F.(2d) 553; Montgomery et al. v. City Council of Charleston (C. C. A.) 99 F. 825, 48 L. R. A. 503; Mercantile Trust Co. v. Hart (C. C. A.) 76 F. 673, 35 L. R. A. 352. The moneys advanced to the Fahy Market were trust funds, and presumably they were improperly used in making these loans.

New York Decedent Estate Law (Consol. Laws, c. 13) § 111, reads:

"An executor, administrator, trustee or other person holding trust funds for investment may invest the same in the same kind of securities as those in which savings banks of this state are by law authorized to invest the money deposited therein, and the income derived therefrom, and in bonds and mortgages on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon. Any executor, administrator, trustee or other person holding trust funds may require such personal bonds or guaranties of payment to accompany investments as may seem prudent, and all premiums paid on such guaranties may be charged to or paid out of income, providing that such charge or payment be not more than at the rate of one-half of one per centum per annum on the par value of such investments. But no trustee shall purchase securities hereunder from himself."

[4] Section 239 of the New York Banking Law (Consol. Laws, c. 2) enumerates the kinds of investment a savings bank may make. It cannot make an unsecured loan to a private individual. Unless the will of Comerford expressly permitted the executors to make the loan in question, it was illegal. While the claim filed did not tender this issue, the appellants assert their equitable lien upon the theory that it was a lawful advance of money with a promise of return, and inferentially, at least, that it was a proper act of the administration of the assets of the estate. But since the state law forbade such a loan, and at least the sum paid for taxes is traceable to the real property and out of the proceeds of its sale, this sum should first be repaid to the executors. The balance of the $15,000 was paid to general creditors by the Fahy Market after its receipt, and it in no way is traceable.

The decree will be modified, to permit the appellants a preference of claim for the amount paid for taxes on the real estate, and a claim with the general creditors for the remainder.

Decree modified.