8. KUPPENHEIMER & CO., Inc., v. MOR-
NIN et al.[*]

No. 10142.

Circuit Court of Appeals, Eighth Circuit.

June 12, 1935.

Robert Bachrach, of Chicago, Ill. (Julius Moses, Walter Bachrach and William A. Smith, all of Chicago, Ill., and Frank A.

[*]Writ of certiorari denied 56 S. Ct. 135, 80 L. Ed. —.

O'Connor, of Omaha, Neb., on the brief), for appellant.

D. M. Kelleher, of Fort Dodge, Iowa (John T. Sullivan, Jeffery G. Sullivan, and J. D. Liffring, all of Waterloo, Iowa, on the brief), for appellees.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Plaintiff, appellant here, sued appellee, receiver, and one A. W. Steely in equity to subject certain money in the hands of the former, as receiver of the Commercial National Bank of Waterloo, Iowa, and two parcels of land of Steely, to an alleged equitable lien for the payment of a note of plaintiff, made to it by the Steely Clothing Company, under facts presently to be detailed. The court below sustained the motion of defendant Mornin to dismiss plaintiff's bill for lack of equity, and plaintiff appealed. We shall refer to the parties, as they stood below, as plaintiff and defendants.

The facts are few and simple, but withal unique, and legally interesting. The Steely Clothing Company, an Iowa corporation, was indebted to plaintiff in the sum of $8,500, evidenced by the note of said company. The president of the company, one W. E. Steely, was the son of defendant A. W. Steely, who "guaranteed," as the bill expresses it, the payment of this note by his indorsement thereon. In further guarantee, it is alleged, A. W. Steely, contemporaneously with the making of the note to plaintiff by the Steely Clothing Company, signed and delivered to plaintiff the following writing:

"For and in consideration of the acceptance by B. Kuppenheimer & Co., Inc., of my guarantee of the promissory note of the Steely Clothing Company, for the sum of Eight Thousand Five Hundred Dollars, said B. Kuppenheimer & Co., in the manner and form as set forth in said note, and for other good and valuable consideration, the receipt whereof is hereby acknowledged;

"The undersigned does hereby promise and agree, not to convey or mortgage the real estate *now owned by him, wherever situated,* until said promissory note and interest thereon has been fully paid; in the event, however, that said real estate or any part thereof be sold or mortgaged, the undersigned, hereby agrees to pay the proceeds arising from any such sale or mortgage, towards the payment of said promissory note.

"Upon the payment of said promissory note, this agreement is to become null and void and of no effect." (Italics ours.)

A. W. Steely at this time was the owner of four several parcels of land situate in Black Hawk county, Iowa. Without paying the $8,500 note, which when this suit was begun was due and unpaid, perforce an acceleration clause, defendant Steely, in breach of his promise, neither to mortgage nor convey his real estate, and without paying the proceeds thereof to plaintiff, mortgaged one parcel of his lands situate in said county, and conveyed by quitclaim another parcel, in such wise and to such effect, that defendant Mornin, as receiver, was enabled to collect out of the proceeds of such sale and mortgage the sum of $15,400, and to apply the same on certain secured indebtedness "supposedly" (again, as the bill expresses it) due to the bank of which defendant Mornin was receiver. And the bill says that this was done with the knowledge by Mornin of the existence and contents of the instrument above quoted. The mortgage was made to a Federal Land Bank, and the conveyance to one John Steely, the brother of defendant Steely. Each of them was made some two years after the making of the quoted document, and scienter is not alleged in the grantees, as of the time they took title.

It is not clearly stated precisely in what way Mornin was enabled to collect from Steely the supposed indebtedness, nor is it here and now relevant. It may be presumed that Steely owed the bank of which Mornin is receiver, and that Mornin, being interested in collecting this indebtedness, assisted Steely in making the sale and the mortgage so that Steely would be financially in funds with which to pay the insolvent bank. Of course, since no fraud seems to be alleged, the debt must be regarded, we think, as an actual one, and not a supposed one. The writing quoted and in controversy was not recorded.

In limine, appellant complains that only Mornin moved to dismiss the bill; that no pleading was made thereto in anywise by Steely, and therefore the court erred in dismissing the bill as to Steely. The record presents procedural anomalies in other aspects. It is sought in the identical bill to have decreed in the hands of defendant Mornin a lien, or trust upon certain money,

in his hands, in which money defendant Steely has no interest, and also to fasten a lien on certain parcels of land owned by Steely, in which lands defendant Mornin has no interest.

The record discloses that defendant Steely neither joined in the motion to dismiss or made such a motion in his own behalf, nor did he answer; but no decree pro confesso was taken against him. When the motion of defendant Mornin was sustained by the court nisi, the plaintiff neither asked leave to amend or to file an amended bill of complaint, nor did it decline to plead further and thus leave to the trial court the only alternative of dismissing the *cause of action,* so that a proper appeal could be taken. At once upon the sustaining of the motion, and without further action, plaintiff took the appeal at bar against both Mornin and Steely, naming both of them as appellees, in the citation and in the bond on appeal for costs. So, without passing upon any question above suggested, or even pausing to characterize any of them, we are of the opinion that plaintiff cannot now be heard to say that the motion to dismiss the bill of complaint was not deemed by plaintiff, defendants, and the trial court as being on behalf of both defendants. In the light of plaintiff's action about the matter, it must be held that it waived the failure of defendants to specifically name Steely as a party movant in the motion to dismiss. It seems clear that the bill is duplicitous, but since no question is made upon the point, or the others suggested, we take the case as we find it.

The first question of law is, Did the writing, executed and delivered by defendant Steely to plaintiff, constitute an equitable assignment of the proceeds arising from the mortgage of the one parcel of real estate and the sale and conveyance of the other? This question concerns defendant Mornin alone. The second question is, Was the language contained in the promise of defendant Steely "not to convey or mortgage the real estate now owned by him, wherever situated," sufficient to constitute an equitable lien or mortgage on the remaining two tracts of land owned by defendant Steely? This question concerns the latter alone; defendant Mornin having presently and on this record no earthly interest in it. True it is, that it may well be, the decision of the latter question will as an inevitable corollary carry with it a decision of that first mooted. But both questions are put forward in the duplicitous bill of complaint here under attack; both are discussed at great length in the briefs of counsel, and so candor may require that both be frankly met in the expression of our views.

Much is said in the briefs touching the sufficiency vel non of the description of the lands as contained in the writing here sought to be upheld as creating a lien in the nature of an equitable mortgage. All of this is in our opinion afield from the bald question in the case. The matter of description here cuts no figure in the case. In passing, it may be said, merely arguendo, however, that courts should be slow to uphold a description of lands so blind or recondite as that those thereafter desiring to deal with the owner of the land would be compelled, as the learned trial judge expressed it, to examine "the records, not only of every county in the State of Iowa, but of every county in every other State in the United States." And since the writing limited the alleged lien "to lands now owned" by Steely, this examination must of necessity go further, and involve examination of ownership at and prior to December 10, 1931, the date of the writing. That such a situation would be calculated to put too great a strain on business goes without saying.

The difficulty with the contention upon the point made by plaintiff is that, by the language used, no intent is evinced to create a lien. As said already, Steely simply promised not to convey or mortgage any land then owned by him till the note was paid. Reading the writing by the four corners, there may well be a hint that a lien was held in mind; but those subsequently dealing with real estate, whether as creditors or grantees, are entitled to more than a hint; they must have an unequivocal statement of the lien sought to be created, and of the property on which the lien is sought to be fastened.

Both sides rely on section 1235 of Pomeroy, Equitable Jurisprudence, which reads thus: "The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer

the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs—administrators, voluntary assignees, and purchasers or incumbrancers with notice. * * * In order, however, that a lien may arise in pursuance of the doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and *must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation."* (Italics ours.)

Cases dealing with equitable liens and fairly supporting the quoted text of Pomeroy are numerous. Some of them are: East Side Packing Co. v. Fahy Market (C. C. A.) 24 F.(2d) 644; Redemptorist Fathers v. Purdy, 174 Wash. 358, 24 P.(2d) 1089; Geddes v. Reeves Coal & Dock Co. (C. C. A.) 20 F.(2d) 48, 54 A. L. R. 282; Carey v. Chase, 187 Iowa, 1239, 175 N. W. 60.

There can be no doubt that under the allegations of the bill of complaint the Federal Land Bank, the mortgagee, and John Steely, the grantee, respectively, took good and valid titles to the interests severally conveyed to them. They took for value, without actual notice, and absent constructive notice, which would have been afforded by recordation. So as to them, or either of them, there was no lien; but it is insisted that since defendant Mornin took the proceeds with notice, the lien, nonexistent as to the mortgagee and grantee, jumped across the latter and attached again to the first holder who had notice. No cases are cited upholding this seeming anomaly, and so we pass it as not necessary to a decision of this case, in the light of the view we are constrained to take of other decisive questions.

Some substantial parts of the briefs of counsel are devoted to discussions as to whether the language of the writing in controversy does or does not involve a forbidden, and so invalid, promise in restraint of conveyance. We do not think this question is involved, for the language used does not attempt to create either a temporary or perpetual covenant in restraint of conveyance. True, Steely promised not to convey or mortgage his lands till the note was paid, but he went further, and promised if he did convey or mortgage, he would apply the proceeds from such conveyances to the payment of the note. So there was left residual in Steely, the promisor, both the privilege and power of conveying and mortgaging. In short, there is no ban, or even curtailment, put on the power to convey or mortgage; he might do so if he desired or saw fit.

So in the final analysis of both law and facts, all that is left of this case (Steely having exercised his privilege of conveying) is whether his promise to apply the proceeds of any conveyance toward the payment of the note creates, in case of his conceded failure to make such application, an equitable assignment of such proceeds. To put it another way, Steely, the promisor, agreed and promised to pay the note out of the proceeds of any sale or mortgage of the lands which he should make, and that is all he promised to do. And so as indicated, so far as concerns defendant Mornin, the case resolves itself into the simple question whether this promise so to pay constituted an equitable assignment of the proceeds in controversy. We are impelled to the view that it did not. What was here promised was in all fair effect precisely what was agreed to be done in the case of Christmas v. Russell, 14 Wall. 69, 71, 20 L. Ed. 762; yet it was therein held that no equitable assignment was created. The very strict requirements set down in the Christmas Case, supra, as necessary to the creation of an equitable assignment, have confessedly been broadened by subsequent decisions of the Supreme Court. But for the major part, this mellowing of component elements has occurred, either in cases involving contingent fees of attorneys, or in cases of liens on personal property put up and held as collateral security. See Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865; Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530. Fairly good reasons for putting aside the strict requirements of the doctrine of equitable assignments can be found in the case of an asserted lien by a lawyer for his fee, on the money recovered as the result of litigation, for the efforts of the lawyer bring the fund into existence. In such case it may be said, arguendo, that the lawyer asserting the lien is, in a manner of speaking, a joint adventurer, and such cases scarcely belong in the category of equitable assignments.

In the case of collateral pledged to secure a debt, possession usually follows, and so notice sufficient to induce inquiry is given to the world.

We repeat that the case at bar, in the language relied on as creating the assignment, is hardly to be distinguished from the Christmas Case, supra, and is precisely similar in effect to the case of Hibernian Banking Association v. Davis, 295 Ill. 537, 129 N. E. 540, 541. In the Davis Case, supra, the promise was, "that in case or whenever she sells or otherwise disposes of said real estate premises she will cause the said notes to be paid out of the proceeds thereof." Yet the above case held that no equitable assignment was created. In the Christmas Case, supra, the language relied on was a clear promise to pay out of the proceeds of a certain note *payable to bearer,* when such note should be sold. Specifically, the promisor in that case said, "I have ever held the Lyons note as sacred for the payment of this debt, and have it now in New York endeavoring to sell it with the mortgage to pay this debt. * * * If not sold I will send it to you as soon as I return."

Many cases are to be found sustaining the rule that a promise to pay out of a particular fund, when it shall come into existence, does not create an equitable assignment of that fund. As counsel for defendants on argument aptly said, in effect, that business and commerce will be greatly harmed, hamstrung, and impeded if every agreement of an Iowa farmer to pay a debt out of a crop of corn, when he shall have sold the corn, is to be held to be an equitable assignment of the proceeds of such corn.

There is, of course, a vast difference in law between an order to pay a debt out of a particular fund and a promise to pay out of such fund. That the former, when accepted, is binding, is almost, if not quite, hornbook law. That the latter is not binding is well-nigh as well settled. Rufe v. Commercial Bank (C. C. A.) 99 F. 650; Long v. Farmers' State Bank (C. C. A.) 147 F. 360, 363, 9 L. R. A. (N. S.) 585; Trist v. Child, 21 Wall. 441, 22 L. Ed. 623; Dillon v. Barnard, 21 Wall. 430, 22 L. Ed. 673; East Side Packing Co. v. Fahy Market (C. C. A.) 24 F.(2d) 644; Smedley v. Speckman (C.'C. A.) 157 F. 815, 819; Cogan v. Conover Mfg. Co., 69 N. J. Eq. 358, 60 A. 408, 411; Cushing v. Chapman (C. C. A.) 115 F. 237, 239; State Central Savings Bank v. Hemmy, 77 F.(2d) 458, decided by this court recently.

Whether an action at law will lie against defendant Steely, as was suggested in argument, for that he broke his agreement, is not before us, and we are not called on to decide it.

It follows that in our opinion the trial court did not err in sustaining the motion to dismiss the bill of complaint and action, and so his order in that behalf is affirmed, with costs to be taxed against appellant.