## GLOBE INDEMNITY CO. v. PUGET SOUND CO., Inc., et al.

### Civil Action No. 1136.

District Court, W. D. New York.

Dec. 1, 1943.

Chester McNeil, of Buffalo, N. Y., and Aaron H. Marx, of New York City, for plaintiff.

Albrecht, Maguire & Mills, of Buffalo, N. Y., for defendant Frank J. Maguire, executor.

Gibbons, Pottle & Pottle, of Buffalo, N. Y., for defendant Puget Sound Co., Inc.

KNIGHT, District Judge.

This is an action of interpleader. The defendants, Puget Sound Company, Inc. (hereinafter called Puget), and Frank J. Maguire, as executor of the estate of Gertrude B. Zulauf, deceased, have each answered separately claiming title to the sum of $7,500 deposited with the court by the plaintiff, Globe Indemnity Company (hereinafter called Globe). The defendant, Nathan E. Blodgett, has not appeared.

Heretofore, upon plaintiff's motion, an order was made releasing the plaintiff from liability to either party defendant by reason of the deposit aforesaid, and judgment thereon was duly entered.

One Josephine V. Blodgett died testate on or about October 25, 1924, and by her will thereafter duly probated, she named the defendant Frank J. Maguire as executor and trustee. On or about March 15, 1926, said Nathan E. Blodgett executed and delivered to Gertrude Zulauf (then Gertrude B. Blodgett) his promissory note for $3,000, payable at sight after such date. Certain payments in the aggregate of $180 were made on said note, and no question is raised that the note has not been outlawed. Gertrude Zulauf died in or about 1934, testate, and in and by her will named the defendant Maguire the executor of her estate. Thereafter, in 1940, proceedings were instituted in the Surrogate's Court for the settlement of the Accounts of Maguire, as executor and trustee of the estate of Josephine V. Blodgett, deceased, and litigation over such accounts continued from in or about 1940 till finally terminated in May, 1942, by a decision of the Court of Appeals (288 N.Y. 626, 42 N.E.2d 619) affirming an order of the Appellate Division (263 App.Div. 791, 32 N.Y.S.2d 779) adjudging that defendant Maguire, as executor and trustee of Josephine V. Blodgett, deceased, had overpaid Gertrude Blodgett,

now Zulauf, who was a life beneficiary under the will of Josephine Blodgett, deceased, the sum of approximately $220,000, and surcharging Maguire with that amount. Nathan E. Blodgett was held to be entitled to one-fourth of that amount, or $55,000. The plaintiff, Globe, was surety on the bond of Maguire, as executor and trustee of the estate of Josephine V. Blodgett, deceased.

On February 16, 1934, Maguire wrote to Nathan E. Blodgett advising him that he was executor of the estate of Gertrude Zulauf; that the aforesaid note was in her estate, and further stating: "When we get the settlement of the Blodgett estate arranged it would be convenient to settle the note at the same time if you will just authorize me to deduct from your share of the Blodgett estate the amount due to Mrs. Zulauf on the note." To that Blodgett replied on February 22: "Your letter of February 16 at hand regarding the note. You are hereby authorized to deduct the amount of the note from my share of the estate of Josephine V. Blodgett."

Puget claims title to all of the interests of Nathan E. Blodgett in the estate of Josephine V. Blodgett, deceased, by virtue of a written instrument purported to have been executed June 9, 1941, and which recites that Blodgett sells and assigns to Puget all right, title and interest in the estate of Josephine V. Blodgett, deceased, which Blodgett has or may be entitled to receive. The validity of this assignment is challenged by defendant Maguire.

In June, 1942, Maguire as executor under the will of Gertrude Zulauf, deceased, brought suit against Nathan E. Blodgett and Puget Sound Co., Inc., in the Supreme Court of the State of New York on the note aforesaid and procured a warrant of attachment which was served on the plaintiff Globe Indemnity Company. On motion the action was dismissed as to the defendant Puget.

Negotiations were thereafter entered into for the settlement of the liability of Globe, as surety. On or about July 13–17, 1942, the remaindermen, excepting Nathan E. Blodgett, and his alleged assignee, Puget, executed an agreement in writing whereby, among other things, it was provided that Globe pay $208,000 in settlement of the liability as surety as aforesaid, to be divided equally among the four remaindermen, save that $7,500 out of the proportionate share of Blodgett, or his alleged assignee, Puget, was "to be paid to the Sheriff of New York County under writ of attachment heretofore served."

The aforesaid agreement was modified by striking therefrom the quoted provision in regard to the payment of the said $7,500 and by inserting in place thereof a provision that: "If the Globe Indemnity Company shall be compelled by virtue of a valid writ of attachment or other process to pay any of the funds which would otherwise be payable to Nathan E. Blodgett or Puget Sound Company, Inc., a corporation, to the Sheriff of New York County, the amount of such payment so required to be made by the Globe Indemnity Company, not to exceed $7500.00, may be deducted from the proportion of the sum of $208,000.00 to be paid by the Globe Indemnity Company by virtue of the provisions of Exhibit 'A' hereof (agreement hereinbefore mentioned) and this agreement to the Puget Sound Company, Inc., a corporation. Nothing in this agreement or in Exhibit 'A' hereof shall be deemed to in any manner waive or impair any defense or objection which the Puget Sound Company, Inc. may have or assert to said above action, or to any attachment or other process issued therein, nor shall the payment of any funds to the Sheriff of New York County by virtue of the above provision divest the Puget Sound Company, Inc. of title to such funds but title to such funds so paid to said sheriff shall be and remain in the Puget Sound Company, Inc., a corporation, subject only to such right therein or thereto in others as may be acquired through valid attachment thereof." In August, 1942, following the making of said agreement, Puget brought suit against Globe in the State of Washington to recover the $7,500 held by Globe. Thereafter this action of interpleader was brought. In August Maguire obtained a judgment in the suit on the note in the sum of $6,477, execution was issued and served on Globe thereon. On September 1, 1942, Maguire procured by order of the Supreme Court of New York an extension of 60 days' time in which to proceed on his attachment, and on September 14, 1942, an order was made in that court authorizing Maguire to join with the sheriff of New York County in an action to recover the moneys claimed to have been attached. No such suit was ever brought, and the time within which it could have been brought expired prior to the commencement of this interpleader action. Sections 922 and 943 of the Civil Practice Act, New York.

The position of Maguire, the executor of Zulauf, is confused and contradictory. He asserts an equitable assignment of Nathan Blodgett's interest in the Josephine Blodgett estate in the $7,500, by virtue of the letter purporting to authorize him to deduct the amount of the Blodgett note from the latter's share in the Josephine Blodgett estate. Long after such letter from Blodgett, Maguire brought the action against Nathan Blodgett to attach the $7,500. This action was based wholly on the note, and he recovered judgment in an amount upwards of twice the face of the note. Not only was this done but he entered into the stipulation with Globe, Puget and others providing that the title to the $7500 should remain in Puget "subject only to such right therein or thereto in others as may be acquired through valid attachment thereof." This stipulation did not revive the right to pursue the fund in the attachment suit.

However, if there was an equitable assignment, what Maguire subsequently did in bringing suit and in entering into the stipulation did not affect the assignment itself. If the interest of Nathan Blodgett in the Josephine Blodgett estate was assigned to Maguire, as executor of Zulauf, an action thereafter brought by this executor on the note could not legally be maintained.

It is believed that there was an equitable assignment of the interest of Nathan E. Blodgett in the Josephine Blodgett estate to the amount unpaid on the note with interest to the time of the assignment. It seems to me that the rule of determination is clearly stated in numerous cases. While there is a distinction between an equitable lien and an equitable assignment (In re Interborough Consol. Corp., 2 Cir., 288 F. 334, 351, 32 A.L.R. 932) as generally applied, it is believed that it is a matter of no difference in effect whether we call this an equitable lien or an equitable assignment. No rights of creditors or any other rights in the estate are affected. In that case it was said: "An equitable lien, while not a title, is available by way of charge. An equitable assignment gives the assignee a title which, although not cognizable at law, equity will recognize. * * * No particular form of words seems to be necessary to make a valid equitable assignment of a chose in action. A written or verbal declaration disclosing an intention to part with the ownership of the chose is all that is required." Gregory v. Morris, 96 U.S. 619, 24 L.Ed. 740; Hauselt v. Harrison, 105 U.S. 401, 26 L.Ed. 1075. In 19 Am. & Eng.Encyc. of Law, 2d Ed., p. 16, the above case is cited with approval, it being there said: "There must be an appropriation of the fund pro tanto, either by giving an order, or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor." Such is the situation here. "There is, of course, a vast difference in law between an order to pay a debt out of a particular fund and a promise to pay out of such fund. That the former, when accepted, is binding, is almost, if not quite, hornbook law. That the latter is not binding is well-nigh as well settled." B. Kuppenheimer & Co., Inc., v. Mornin, 8 Cir., 78 F.2d 261, 265, 101 A.L.R. 75. If the intention to transfer a present interest is clearly expressed, the transaction is an assignment. State Central Savings Bank v. Hemmy, 8 Cir., 77 F.2d 458. The test of whether an agreement to pay amounts to an equitable assignment is whether the debtor would be justified in paying the amount to the person claiming to be the assignee. East Side Packing Co. v. Fahy Market, 2 Cir., 24 F.2d 644. The test is whether the debtor would be authorized to pay. 5 C.J. 898, cases cited; 6 C.J.S., Assignments, § 41. Any benefit accruing to the assignor will be sufficient consideration to support an assignment. Kemp v. National Bank, 4 Cir., 109 F. 48; Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid Transit Co., 2 Cir., 6 F.2d 960. No particularity is required to be necessary to effect an assignment. O'Connell v. City of Worcester, 225 Mass. 159, 114 N.E. 201. There must be a designated fund from which payment is to be made, and there is such here. It does not appear whether there were funds in the hands of the executors which could be applied to the payment of the note, it does appear that there were such funds so sufficient held by the executor's surety, and at no time at least prior to the stipulation was the assignment questioned. However, equity will support assignments of things which have no present or potential existence, but rest in mere possibility. Kendall v. United States, 74 U.S. 113, 7 Wall. 113, 19 L. Ed. 85; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; In re Dier, 3 Cir., 296 F. 816; 6 C.J.S., Assignments, §

61. Such assignment will come into being when the fund is ascertained and identified. Early & Daniel Co. v. Pearson, 5 Cir., 36 F.2d 732; Ferguson v. Larson, 139 Cal. App. 133, 33 P.2d 1061. The recognition of courts of equity of an assignment invalid in law is based on principles of natural justice. See also Christmas v. Russell, 81 U.S. 69, 14 Wall. 69, 20 L.Ed. 762; Link's Will, 173 Misc. 217, 17 N.Y.S.2d 634; and Adams v. Garzillo, 155 Misc. 358, 279 N.Y. S. 398.

Here we have every element necessary to sustain the payment of the note out of the Josephine Blodgett estate: the admitted indebtedness of Nathan Blodgett; the intention to have the indebtedness paid; the order to deduct; a fund from which the indebtedness can be paid; the assignor retaining no further interest in that portion of the estate; no retained control or power of revocation; authority to the executor to pay without intervention; protection to the executor in payment.

The several cases cited by defendant Puget are all either easily distinguishable or are not in conflict with the view here entertained. Some of these cases have hereinbefore been cited.

Thomas v. New York & G. L. Ry. Co., 139 N.Y. 163, 34 N.E. 877, 881, involved an entirely dissimilar situation. The opinion, however, cites Trist v. Child, 21 Wall. 441, 22 L.Ed. 623, where the court said: "But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an application of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor, without the further intervention of the debtor." In the Trist case, Child, an attorney, sought to enjoin the payment of moneys by the government to his client and based his right upon an agreement for compensation to be paid out of the money procured on the claim against the government.

Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 277, 58 L.Ed. 530, held that the statement in the Trist case that "Child had no lien because it was forbidden by act of Congress, and also, it was said, because there was no sufficient appropriation of the fund, so that the only remedy, if there had been one, would have been at law," was not necessary to the decision and that it seems to have overlooked Wylie v. Coxe, 15 How. 415, 14 L.Ed. 753, which decided that a contract for a contingent fee out of a fund awarded constituted a lien upon the fund. In Barnes v. Alexander, the contingent fee agreed upon was paid.

In Wemple v. Hauenstein, 19 App.Div. 552, 46 N.Y.S. 288, plaintiff sought to enforce a lien upon funds in the estate, where long before the estate came into being, plaintiff and defendant, son of the deceased, had agreed that moneys advanced by the plaintiff should be paid at death of the father. Here there was estate in being and there was no authorization to pay any note. This case cites Williams v. Ingersoll, 89 N.Y. 508, and the Thomas case, supra. The facts in Williams v. Ingersoll, supra, are analogous to those in the Trist case.

In Matter of Whitney's Will, 206 App. Div. 582, 201 N.Y.S. 745, 746, the legatee agreed to pay a surety company out of the estate of his father a loss in acting as the legatee's surety. Here then was a mere acknowledgment of a debt and a promise to pay out of this fund when procured. The court said: "There are no words authorizing the American Surety Company to collect the $10,000 from the estate of * * *. There is nothing to indicate an intention on the part of * * * to give the surety company the right to enforce payment from any one save himself."

In East Side Packing Co. v. Fahy Market, supra, the court held that agreement to pay out of particular funds does not constitute an equitable assignment and holding that it was necessary that the transfer be of such character that the fund holder can safely pay and is compelled to do so even though forbidden by assignor. There the promise to repay rested entirely upon an oral understanding. Said the court, in part [24 F.2d 645]: "To constitute an equitable assignment, the intent to do so and its execution are indispensable. The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. To do so is fatal to the claim. There must be a transfer of such a character that the fund holder can safely pay, and is compelled to do so, even though he be forbidden by the assignor." The court further said: "Whether or not an equitable lien has been established depends upon the facts peculiar to each case. * * * No fund ever came into existence."

56

So far as it is seen, there is no conflict in the text books or the decisions of the courts generally that, under the facts disclosed here, there was either a lien or an equitable assignment. In either conclusion Maguire is entitled to recover. Such recovery, however, can be only for $3,000, the face of the note, with interest.

The President of Puget testified, in effect, that he had no knowledge of the transaction relative to the procuring of the assignment from Blodgett to Puget, and Nathan Blodgett testified that he did not recall executing the assignment or receiving any pay for it. The record of the testimony of these witnesses, in the mind of the court, discloses either untruthfulness in their statements or an intentional withholding of the facts. No fraud is alleged by Maguire. Whether such allegation is necessary or not does not affect the decision to be made. I hold that there was an equitable assignment of the interest of Nathan Blodgett in the estate of Josephine Blodgett, deceased, to Maguire, as executor of the estate of Josephine Blodgett, deceased, to the amount of the note with interest from its date to the time of the delivery of the letter authorizing its payment. In other words, Maguire, as executor of Zulauf, deceased, is entitled to recover the sum of $3,000 with interest from March 15, 1926, to February 22, 1934, less $180 interest paid on the note April 18, 1928. Interest necessarily ceased when the assignment became effective. Maguire is not entitled to recover any sums expended in connection with the suit in attachment brought by him against Nathan Blodgett or on the judgment therein.

The attorneys for Globe have presented a bill for services and expenses in bringing the action in interpleader. The amount applied for is excessive. The proceeding was simple. The attorneys have expended very considerable amount of time and expense in travel, but this very largely could have been obviated without prejudice to the client. The allowance to them for services and expenses is fixed at $500, and this amount is to be paid by Puget and Maguire, as executor, equally. The balance of the $7,500 after the deductions aforesaid is to be paid to Puget.

Findings may be submitted to accord with and to be taken as a part of this opinion. No costs are allowed to Maguire or Puget.