## GLOBE INDEMNITY CO. v. PUGET SOUND CO., Inc.

### No. 135.

Circuit Court of Appeals, Second Circuit.

March 6, 1945.

Rehearing Denied May 28, 1945.

See, also, 47 F.Supp. 43.

Chester McNeil, of Buffalo, N. Y., and Aaron H. Marx, of New York City, for appellant-appellee Globe Indemnity Co.

Gibbons, Pottle & Pottle, of Buffalo, N. Y. (Frank Gibbons, of Buffalo, N. Y., of

counsel), **for** appellant-appellee Puget Sound Co., Inc.

Albrecht, Maguire & Mills, of Buffalo, N. Y., for appellant-appellee Frank J. Maguire, executor.

Edward N. Mills, of Buffalo, N. Y., for Frank J. Maguire, executor of Gertrude B. Zulauf.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff and both defendants have appealed from a judgment entered after trial of issues raised in an action of interpleader brought by a surety on a trustee's bond to determine how certain funds which it held should be distributed. The facts were stipulated, and only such of them as are essential to an understanding of this appeal will be recited.

In 1924 Josephine V. Blodgett died leaving property in trust, and the defendant Maguire was appointed executor of her will and testamentary trustee. The life beneficiary under this trust was Gertrude B. Zulauf, to whom in 1926 the defendant Nathan E. Blodgett gave a promissory note for $3,000 payable at sight. Mrs. Zulauf died in 1934 and the defendant Maguire was appointed executor of her will also. With her death the trust established under the will of Mrs. Blodgett came to an end, and four remaindermen became entitled to share in the estate, one of whom was the defendant Nathan E. Blodgett. On February 16, 1934, Maguire wrote Blodgett that he was the executor of the Zulauf will and called his attention to the fact that among the assets in Mrs. Zulauf's estate was Blodgett's promissory note for $3,000. The letter went on to say that, "When we get the settlement of the Blodgett estate arranged it would be convenient to settle the note at the same time if you will just authorize me to deduct from your share of the Blodgett estate the amount due to Mrs. Zulauf on the note. By the time I have your reply I think we will have a Statement of the estate accounts ready for you and will send it forth." On February 22, Blodgett replied by letter, in which he said, "You are hereby authorized to deduct the amount of the note from my share of the estate of Josephine V. Blodgett."

The deduction was not made as thus authorized, however, as the settlement of Maguire's accounts in the Blodgett estate was delayed by litigation which eventually determined that as trustee Maguire had overpaid the life beneficiary approximately $220,000. The decree of the surrogate surcharged Maguire for this amount and awarded to Blodgett as remainderman $55,000 of it. In re Blodgett's Estate, 261 App.Div. 878, 25 N.Y.S.2d 39, modified 263 App.Div. 791, 32 N.Y.S.2d 779, affirmed 288 N.Y. 626, 42 N.E.2d 619.

On June 9, 1941, Blodgett assigned to the defendant Puget Sound Company, Inc., a Washington corporation, all interest in the estate of Josephine V. Blodgett which he then owned or might subsequently acquire.

Thereafter, in June, 1942, Maguire began suit against Blodgett and Puget Sound in the New York Supreme Court to recover the principal and unpaid interest due on the promissory note. A warrant of attachment was served by the sheriff of New York County upon the plaintiff Globe Indemnity Company, a New York corporation which was the surety upon Maguire's trustee bond. Service of the summons and complaint which was made upon Puget Sound in the State of Washington was vacated, but like service upon Blodgett was not and judgment for $6,477 was later entered against him.

In July, 1942, the parties entered into a compromise agreement, the now pertinent part of which will be later mentioned, under which Globe agreed to pay $208,000 in discharge of its liability on Maguire's bond. It distributed this $208,000 among the persons entitled to it, with the exception of $7,500 which it retained pursuant to a provision of the agreement.

In August, 1942, Puget Sound brought suit against Globe in the Superior Court of Washington to recover the $7,500, and in the same month Maguire obtained his judgment in the New York court for $6,477 upon the promissory note and served an execution thereon upon Globe. The latter thereupon deposited the $7,500 in the registry of the District Court for the Western District of New York and brought this action of interpleader against Puget Sound, Maguire and Blodgett under 28 U.S.C.A. § 41 (26), alleging that it disclaimed all interest in the fund and stood ready to abide the judgment of the court upon the conflicting claims to it. It prayed for an injunction to restrain the defendants from prosecuting their actions to recover the money. The court denied a motion by Puget Sound to dismiss the interpleader ac-

tion and granted the injunction. Globe Indemnity Co. v. Puget Sound Co., D.C., 47 F.Supp. 43.

The defendant Blodgett was not served and did not appear in the action, the only parties at the trial being Puget Sound and Maguire. The court below held that Blodgett's letter of February 22, 1934, constituted an equitable assignment to Maguire of his interest in the Josephine V. Blodgett estate to the extent of the amount of the note with unpaid interest to the date of the assignment. It therefore entered judgment in favor of Maguire for $3,000 plus interest from March 15, 1926, to February 22, 1934, less $180 interest already paid. It also fixed $500 as counsel fees and expenses to Globe, this amount to be deducted equally from the shares of Maguire and Puget Sound. The remainder of the $7,500 deposited in the registry of the court was awarded to Puget Sound as assignee of Blodgett. D.C., 53 F.Supp. 51. This appeal followed.

It is doubtful whether Blodgett would have given the authorization to make the deduction had he known that Maguire had overpaid Mrs. Zulauf so much that in equity there was then due Blodgett from the Zulauf estate many times the amount due on the note and that he was then, on an equitable balance of accounts, not a debtor but a creditor of the Zulauf estate. Maguire gave Blodgett to understand in his letter that he was ready to make the distribution when the statement of accounts was ready and that that would be about the time he received Blodgett's reply. Though this was, indeed, a misrepresentation which, however innocently made, may have given Blodgett cause to withdraw his consent to the deduction, there is nothing to indicate that Blodgett attempted to repudiate the authorization to pay the note after he knew of Maguire's overpayment to Mrs. Zulauf and that there would be the delay in distribution due to the surcharge proceedings. For present purposes it must be treated as a continuing offer to permit Maguire to make the deduction whenever the assets in the Josephine Blodgett estate were distributed. If Maguire on the distribution of those assets had paid the note out of Blodgett's share in the Blodgett estate he could, presumably, have accounted, as the Blodgett executor or trustee, for that share pro tanto by showing such payment.

But many doubts arise as to whether this permission to pay amounted to an equitable assignment of any part of the Blodgett share in that estate to the Zulauf estate. There was no order to pay anything on the note. The letter was merely permissive and as subsequent events proved the Zulauf estate was then in equity not a creditor of Blodgett. Even now nothing may equitably be due it on the note, for the Zulauf estate undoubtedly is liable for the repayment of the amounts unlawfully received by Mrs. Zulauf out of the Blodgett estate, one-fourth of which belonged to Blodgett. That amount was established by the decision in the surrogate's court to be at least $12,000 more than Globe has paid and in equity one-fourth of that $12,000 plus interest would be due from the Zulauf estate to Blodgett or his assignee. So it is by no means clear that, if other difficulties in the way of establishing an equitable assignment could be resolved in support of the decision below, any way could be found to work out the consideration for an assignment.

However that may be, the compromise agreement above mentioned controls decision as to the disposition of the fund now in controversy. It is true that Maguire signed that agreement "Individually, and as Executor and Trustee of the Estate of Josephine V. Blodgett" and not expressly as executor of Zulauf, but he now makes no contention based on the capacity, or the lack of it, in which he signed. Of course, he knew as executor of Zulauf that the parties were contracting, among other things expressly as to the ultimate disposition, as will later appear, of the $7,500 now involved in this suit. He knew that they were settling their differences on the basis of a compromise and that one of the considerations for that compromise was the disposal of this fund in the manner stated in the agreement. He participated in that agreement, so far as appears in this record, without any indication that he did not agree as executor of Zulauf and in that capacity, at least, acquiesced in it and in the disposition there made of the subject matter of his attachment in his suit as such executor. Having thus stood by while they changed their positions as they did, he would now as executor of Zulauf be estopped to deny to their pecuniary disadvantage that he was bound to the extent that the agreement affected his rights in that capacity. Swain v. Seamens, 9 Wall. 254, 19 L.Ed. 554; Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed.

618; Kirk v. Hamilton, 102 U.S. 68, 26 L.Ed. 79.

That agreement was made after the parties had been trying to settle all the rather complicated questions growing out of the surcharging of the trustee, with the consequent liability of his surety which it acknowledged to the extent already mentioned. One of these questions involved the claim of Puget Sound as assignee of Nathan E. Blodgett to all of his share, opposed by Maguire as executor and attaching creditor to so much of that share as was required to pay the note. A draft of an agreement to be entered into by the parties was prepared and was signed in July, 1942, by three of the remaindermen and was then sent to Puget Sound for its signature. As then drawn it provided that "$7,500 of Nathan E. Blodgett's share is to be paid to the sheriff of New York County under writ of attachment heretofore served." This draft, which is known as Exhibit A, was not signed by Puget Sound, but instead the latter prepared a memorandum of agreement, called Exhibit B, in certain respects modifying Exhibit A. It attached a copy of Exhibit A to Exhibit B and made it a part of the latter by reference and then executed Exhibit B. Later both Globe and Maguire executed Exhibit B.

The paragraph which shows that the parties contracted with especial reference to the limitation of whatever rights to the $7,500 which Maguire then had or claimed and what they then agreed to in lieu of the first proposal respecting the payment of it to the sheriff of New York County reads as follows:

"2. There is now pending in the Supreme Court of Erie County, New York, a suit wherein Frank J. Maguire as executor of the estate of Gertrude B. Zulauf, deceased, is named as plaintiff, and Nathan E. Blodgett and Puget Sound Company, Inc. are named as defendants, and it is understood that in connection with said suit some writ of attachment or other process has been served or attempted to be served upon the Globe Indemnity Company, a corporation. If the Globe Indemnity Company shall be compelled by virtue of a valid writ of attachment or other process to pay any of the funds which would otherwise be payable to Nathan E. Blodgett, or the Puget Sound Company, Inc., a corporation, to the Sheriff of New York County, the amount of such payment so required to be made by the Globe Indemnity Company, not to exceed $7500.00, may be deducted from the proportion of the sum of $208,000.00 to be paid by the Globe Indemnity Company by virtue of the provisions of Exhibit 'A' hereof and this agreement to the Puget Sound Company, Inc., a corporation. Nothing in this agreement or in Exhibit 'A' hereof shall be deemed to in any manner waive or impair any defense or objection which the Puget Sound Company, Inc., may have or assert to said above action, or to any attachment or other process issued therein, nor shall the payment of any funds to the Sheriff of New York County by virtue of the above provision divest the Puget Sound Company, Inc. of title to such funds but title to such funds so paid to said sheriff shall be and remain in the Puget Sound Company, Inc., a corporation, subject only to such rights therein or thereto in others as may be acquired through valid attachment thereof. The foregoing paragraph numbered (2) is intended to be and is in lieu of and a substitute for the following provisions of paragraph number (1) of Exhibit 'A' hereof to which the Puget Sound Company, Inc. is unwilling to agree, to-wit, 'except $7500.00 of Nathan E. Blodgett's share is to be paid to the Sheriff of New York County under writ of attachment heretofore served' which provision shall be deemed and is stricken and eliminated from Exhibit 'A' hereof."

Thus Maguire expressly agreed to the payment of the fund in controversy to Puget Sound save only that part of it which would be deductible for his benefit upon the fulfillment of the condition precedent specified in the settlement agreement. This condition was never fulfilled, nor can it ever be fulfilled, since when this suit was brought it was already too late under section 922 of the New York Civil Practice Act to enforce the attachment against Globe. Nemeroff v. National City Bank of New York, 262 App.Div. 145, 28 N.Y.S. 2d 295. It is thus made plain that the right of Puget Sound to be paid the entire fund, less a reasonable allowance to Globe for attorney's fees and expenses in this suit, has become absolute and must be enforced by the judgment in this case. That allowance is increased to $750, which is in full for both fees and expenses.

Judgment modified in accordance with this opinion.

On Petition for Rehearing.

PER CURIAM.

We previously held that under the terms of the compromise agreement Maguire would become entitled to a part of the fund in dispute only in the event that Globe should be compelled by virtue of a valid writ of attachment or other process to pay the money to the sheriff of New York County. This condition, we said, could never be fulfilled because at the time the interpleader suit was brought it was already too late under § 922 of the New York Civil Practice Act to enforce the attachment against Globe. In so saying we repeated a statement contained in the opinion and judgment of the district court which is shown by the record to have been erroneous. It appears that on June 3, 1942, Maguire brought suit on the note against Blodgett and Puget Sound in the Supreme Court of New York and there procured a warrant of attachment which was served upon Globe on June 10. Under the statute the sheriff had to obtain possession of the fund or commence an action for that purpose within ninety days after service of the warrant, unless the time should be extended by the court. Civil Practice Act, §§ 922(1), 943. The record shows that on September 1, the time was extended sixty days from September 8, and on the 14th Maguire obtained an order authorizing him to join with the sheriff in an action to reduce the fund to possession. On October 6 the prosecution of that action was forbidden by a temporary injunction granted by the district court on motion of Globe, the plaintiff in this interpleader suit. On February 1, 1943, the injunction was made permanent. Thus it appears that the time within which Maguire was bound to commence his action had not expired before he was enjoined from so doing.

■ Puget Sound further contends that Maguire lost his right to maintain an action in aid of the attachment when he entered judgment against Blodgett in the attachment suit against him on August 14, 1942. This contention, which is based upon § 922(3) of the Civil Practice Act, is not sound. Under the statute as it formerly stood, the law was settled that an action in aid of an attachment could be brought after entry of judgment in the attachment suit. Castriotis v. Guaranty Trust Co., 229 N.Y. 74, 127 N.E. 900; Ackerman v. Tobin, 8 Cir., 22 F.2d 541. We do not believe that the rearrangement of the statutory provisions or the fact that the ninety-day limitation is now read into § 922(3) (Sturcke v. Link, 176 Misc. 93, 26 N.Y.S.2d 748) requires a different interpretation. As before, the section provides for what is essentially a judgment creditor's action, and in the absence of any contrary indication we believe that such an action can be brought after entry of judgment in the attachment suit. Consequently we withdraw that part of our original opinion which is to the contrary and we proceed to a consideration of Maguire's rights on the premise that an action in aid of his attachment is not barred.

■■ Because of the injunction issued by the district court Maguire was prevented from joining with the sheriff in such an action against Globe. Instead he was remitted to asserting his claim in the interpleader suit. See Roberts v. Metropolitan Life Ins. Co., 7 Cir., 94 F.2d 277. His answer relied on the alleged equitable assignment to him by Blodgett and on his attachment and judgment in his suit against Blodgett. But if the exchange of letters in 1934 amounted to an equitable assignment pro tanto of the fund held by Globe at the date of the attachment, the sheriff would not be entitled to possession of that part of the fund; for obviously the attachment would not reach what had previously been assigned to Maguire and would reach only money then owed by Globe to Blodgett.

There was, however, no money then owed by Globe to Blodgett if the assignment of June 9, 1941, by Blodgett to Puget Sound of all his interest in the estate of Josephine V. Blodgett is irrevocable. If it is, none of the fund held by Globe was owed to Blodgett on the date of the attachment and none of it was attached in a suit against Blodgett alone, which is what that suit amounted to when the service upon Puget Sound was vacated by the state court.

■ Maguire attacked the assignment in the trial court upon the ground that it was not supported by consideration. The evidence on this point was meagre and it was left undecided as the court disposed of the case upon another issue. Lack of consideration for the assignment is immaterial, however, for the law is well settled that the assignment of an entire chose in action is valid and irrevocable after delivery though made without consideration. Fulton v. Fulton, 48 Barb., N.Y., 581; Carpenter v. Soule, 88 N.Y. 251, 42 Am.Rep. 248; Matter

810

of Thompson's Estate, 116 Misc. 453, 190 N.Y.S. 125. See also Chase National Bank v. Sayles, 1 Cir., 11 F.2d 948, 48 A.L.R. 207, where a gratuitous assignment of only a part of a legacy was held irrevocable after delivery.

Petition denied.